980 F.Supp. 1051 (1997)
Ronnie RANDOLPH, Plaintiff,
v.
Bill RODGERS et al., Defendants.
No. 4:94CV991 CDP.
United States District Court, E.D. Missouri, Eastern Division.
October 10, 1997.
*1052 *1053 *1054 Peter G. Yelkovac, Peper and Martin, St. Louis, MO, for Plaintiff.
Denise G. McElvein, Attorney General of Missouri, Asst. Atty. Gen., St. Louis, MO, for Defendants.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on the parties' crossmotions for summary judgment. Plaintiff, who is a hearing-impaired inmate in the Missouri Department of Corrections, alleges that the Missouri Department of Corrections and five of its officials violated his rights under various federal and state laws by failing to provide him with a sign language interpreter. Plaintiff's second amended complaint alleges due process and equal protection violations under 42 U.S.C. § 1983 (Counts I and II), violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. (Count III), violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Count IV), and violations of Mo. Ann. Stat. § 476.750 (Vernon Supp.1997) (Count V).
For the reasons set forth below, the Court will grant all defendants' motion for summary judgment on Counts I and II of plaintiff's complaint, and will grant the individual defendants' motion for summary judgment as to Counts III and IV. The Court will grant defendant Bowersox's motion for summary judgment as to Count V. The Court will grant plaintiff's motion for summary judgment as to the injunctive relief sought against the Missouri Department of Corrections on Counts III, IV and V. Remaining for trial are the plaintiff's claims for money damages against the Missouri Department of Corrections on Counts III and IV, and on plaintiff's claim for money damages against all defendants except Bowersox under Count V. Finally, the Court will certify the rulings herein for immediate appeal under 28 U.S.C. § 1292(b).

I. Facts

Plaintiff Ronnie Randolph is currently incarcerated at the Jefferson City Correctional Center ("JCCC") in Jefferson City, Missouri, and at the time he filed suit was incarcerated at Potosi Correctional Center ("PCC") in Potosi, Missouri. Defendants in this action are the Missouri Department of Corrections and Bill Rodgers, Don Roper, Paul Delo, Michael Bowersox, and Dora Schriro.
Defendant Bill Rodgers was employed as plaintiff's Correctional Classification Assistant at PCC. As such, Rodgers assisted plaintiff's caseworker. Rodgers also served as plaintiff's hearing officer during one of the disciplinary hearings at issue in this lawsuit.
Defendant Don Roper was employed as Associate Superintendent at PCC from 1989 to March 1995. In addition, he also served as ADA Coordinator at the time when the two challenged conduct violations were issued. Roper reviewed plaintiff's requests for a sign language interpreter.
Defendant Paul Delo was Superintendent of PCC from 1989 to August 1995 when Bowersox took over in that capacity. Delo reviewed and denied several of plaintiff's grievances requesting an interpreter. Plaintiff contends that, as current superintendent, defendant Mitchell Bowersox also had actual or constructive knowledge of plaintiff's request for a sign language interpreter because he had access to plaintiff's files.
Defendant Dora Schriro is the director of the Missouri Department of Corrections. She reviewed and denied one of plaintiff's requests for a sign language interpreter.
The alleged violations of plaintiff's rights occurred during plaintiff's incarceration at PCC for capital murder from 1989 to October 16, 1996; plaintiff was subsequently transferred to JCCC.
The undisputed evidence establishes that prison records showed, and defendants were at all times aware, that plaintiff was hearing *1055 impaired with speech problems. Additionally, the parties' expert witnesses in this case, Dr. Michael Valente, plaintiff's expert, and Dr. Eric Frederick, defendants' expert, both agree that plaintiff has a profound, bilateral sensorineural hearing loss, and that at this level of hearing loss, plaintiff cannot understand most speech spoken at an average conversational level. Both experts agree that the hearing aids provided by the Department of Corrections for plaintiff are insufficient for his level of hearing loss. The undisputed evidence shows that even with a more appropriate type of hearing aid, plaintiff would still have difficulty understanding most speech.
Plaintiff communicates with prison officials through lipreading, gesturing, written notes, and limited verbal exchanges. Plaintiff has a very limited ability to speak. Several witnesses testified that they could understand plaintiff's speech so long as he did not get upset or excited and if he spoke slowly. These witnesses agreed that understanding plaintiff took a great deal of patience, experience, and familiarity with plaintiff, and that even with patience and extreme efforts on plaintiff's part it was still difficult to understand his speech. Plaintiff can read and write standard English, although he argues that neither his skills in writing nor reading are fluent. Plaintiff has been trained in, can use, and understands American Sign Language.
In 1989, plaintiff filed an inmate grievance requesting an interpreter: "1) for all stages of prison disciplinary procedures, 2) medical, 3) educational, 4) counseling, and 5) any program or activity that has to do with prison confinement ..." Although the grievance form is noted as received on November 16, 1989, is noted as reviewed on November 29, 1989, and is signed by defendant Delo, the portion of the form for the institution head's response is marked only "see attached." The parties are unable to produce any evidence regarding the response to this grievance. It is undisputed, however, that no sign language interpreter has ever been provided for plaintiff at the prison.
Similarly, on April 26, 1993, plaintiff submitted an Internal Resolution Request ("IRR") which stated:
This grievance is about not having a licensed or qualified interpreter for the deaf at PCC. I wish to have an interpreter for the following reasons: (1) for all stages of prison disciplinary proceedings, (2) Medical (3) education (4) counseling and (5) any programs or activities that has to do with prison confinement.
During certain dates of my confinement I received several conduct violations and wasn't permitted to tell my side of the incident because nobody understood what I was saying and I couldn't understand what I was receiving a conduct violation for. During appointments at medical and education the teachers and doctors does not understand what I'm trying to say and its hard to communicate with them, etc., etc.
In the "action requested" portion of this form, plaintiff stated:
I believe this problem could be corrected by having a licensed or qualified interpreter available at this institution or teach some sort of class on communications w/the deaf.
The evidence presented shows that defendants received this form and responded to it; the response is illegible, but it is undisputed that no interpreter was provided as a result of this request.
Plaintiff received two conduct violations in February of 1993, which were later expunged and no discipline was imposed. In each case he provided written statements of his position. His defense to one of the charges was that the correctional officer talked too fast and he did not understand her directions. Plaintiff's written statements from these hearings do not contain any request for a sign language interpreter at the hearings.
Plaintiff requested and received medical treatment on numerous occasions while he was incarcerated at PCC. He was able to communicate with the medical staff through gestures, lip reading and written communications. The only references in the medical records to his disability are several complaints about problems with his hearing aids.
*1056 Plaintiff participated in some educational courses while at PCC, and was evaluated by one instructor as reading at the eighth grade level. Plaintiff and the teacher relied on lip reading and writing to communicate with one another. Plaintiff did not ask the teacher to provide an interpreter for the classes. A later educational program required plaintiff to watch a video, but he could not understand what was being said on the video. Plaintiff also worked in various food service jobs at PCC, and was generally able to communicate with his supervisors and co-workers through gestures, lip reading, and written communications.
On February 16, 1994, plaintiff was given a conduct violation charging him with disobeying an order to return to his housing unit and insulting behavior. Following a hearing on February 18, 1994, plaintiff was found guilty and given thirty days in administrative segregation. Plaintiff did not specifically request an interpreter for this hearing. Plaintiff filed an IRR appealing this sanction. In that appeal he stated, among other things: "I did not curse out the officer, and anyone who knows me knows that there is a great amount of difficulty understanding what I am saying, or what I am being told, due to my being a deaf-mute. No one has ever made arrangements for correcting this communications dilemna [sic]." In the "Action Requested" section of the form he asked that the conduct violation be expunged and stated, "I also ask that effective immediately the Department of Corrections employ a capable staff person whom can assist me with my needs to communicate with the staff personnel." After this IRR was denied plaintiff filed a grievance, appealing the denial, and again stating "I ask that the Potosi Corr. Center hire/employ an interpreter for persons like myself, to insure `meaningful communications.'" Superintendent Delo denied the grievance.
On July 4, 1994, plaintiff received a conduct violation for assault, which alleged that he threw two boxes of cookies at a food service worker. A hearing on this conduct violation was held on July 6, 1994, and plaintiff was found guilty and given thirty days disciplinary segregation. He was also referred to the classification committee, which held a classification hearing on July 7, 1994, and recommended that plaintiff be reassigned to administrative segregation because of the seriousness of the conduct violation. Superintendent Delo approved the reassignment. Plaintiff made written statements at both hearings, but in neither statement did he specifically request the assistance of an interpreter at the hearing. In the statement to the classification committee he referred to his "problem damage of cerebral palsy and deaf mute" in arguing that he did not understand part of the hearing. Plaintiff wrote various letters and grievances following his reclassification and discipline for this conduct violation, arguing that he should have been provided with a sign language interpreter. The prison's response to each grievance was that officials believed plaintiff understood the proceedings and charges against him, and that his behavior at the hearings and his written submissions indicated such an understanding. Defendant Schriro approved the sanctions and denied plaintiff's grievance on October 31, 1994.
Both the Department of Corrections and PCC have positions known as ADA and/or Section 504 Compliance Director or Coordinator, although the duties of these positions is not clear. One of the ADA coordinators testified she had received no training regarding disabilities or the ADA; another testified that his training and duties as ADA coordinator focused only on the rights of staff and visitors, not of inmates.
In 1993, the Missouri legislature passed "Senate Bill 88," now codified at § 476.750 et seq., Rev. Stat. Mo., which became effective on August 28, 1993. That bill provides, in § 476.753, that
1. A designated responsible authority shall provide, based on a deaf person's expressed needs, auxiliary aids and services to interpret the proceedings to a deaf person and, if a deaf person gives testimony or other communication, to interpret the deaf person's testimony or other communication when:
. . . . .
(4) There is any proceeding concerning the well-being or rehabilitation of a deaf person *1057 within a state prison, including, but not limited to, any disciplinary hearing, parole hearing, psychological evaluation/hearing, administrative hearing, sexual assault prevention program, counseling, medical care, any on-the-job or vocational training or any educational program.
Section 476.750(3) defines "designated responsible authority" to include any "presiding officer, chairman, hearing officer ... or similar official in any ... department, agency or legislative body ..."
On February 22, 1994, the Department of Corrections Division of Administrative Human Services sent a memo to the Superintendents and ADA Site Coordinators at the Missouri Prisons, including PCC, regarding Senate Bill 88. That memo stated, in part:
As you know, Senate Bill 88 requires that correctional facilities provide auxiliary aids and services to deaf persons during precedings [sic] concerning their well being or rehabilitation. To assist you in fulfilling this obligation, a copy of the current state contract for Sign Language Interpretation Services is attached.
... Compliance with the ADA requires that such programs be readily assessible [sic].
The letter attached a list of sign language interpreters, their locations and the amount of notice they required for services. Many of the listed providers indicated twenty-four hour notice as a requirement. The March 11, 1994, "Potosi Correctional Center Chronicle" (an internal employee newsletter) provided the following notice:
From Paul Delo, Superintendent Senate Bill 88
We have received a memo and contract information from Division of Administration and Human Services in accordance with Senate Bill 88 for aids and services for the deaf. Should there be a need for services in signed language interpreters now or in the future Mr. Berry has the contract information on file in the Business Office. NOTE: There is a 24 hour advanced notice clause on most contractor's services.
Defendants have provided affidavits discussing security concerns that would arise if a sign language interpreter were required to be present in the prison at all times, or whenever requested by any particular inmate. Defendants have also provided an affidavit by Donna McCondichie, Associate Superintendent of Operations, that the closest authorized vendor of sign language interpretation is in St. Louis. Based on McCondichie's review of the state contracts, she avers that PCC would be charged between $30 and $39 per hour for interpreter services during business hours, and that PCC would have to pay approximately three hours travel time, in addition to the time for the actual interpretation. The interpreter used for plaintiff's deposition charged $30.00 per hour for a five-hour deposition and $28.00 per hour for three hours travel time, for a total of $234.00.

II. Discussion

The Court as a preliminary matter notes that plaintiff's transfer from PCC to JCCC does not moot this case because plaintiff's claims are capable of repetition. Neither plaintiff's deafness nor his life sentence within the Missouri Department of Corrections is at all likely to change. If relief were denied as moot, defendants could simply transfer plaintiff back and forth between PCC and JCCC (or other facilities) to evade review of these issues by any Court. See Higgason v. Farley, 83 F.3d 807, 810-11 (7th Cir.1996) (inmate may continue to seek injunctive relief despite transfer if issue is capable of repetition); see also Washington v. Harper, 494 U.S. 210, 220, 110 S.Ct. 1028, 1035-36, 108 L.Ed.2d 178 (1990).

A. Count I  Due Process

Count I, brought pursuant to 42 U.S.C. § 1983, alleges that defendants violated plaintiff's due process rights by failing to provide him with a sign language interpreter during the two 1994 disciplinary hearings. Plaintiff alleges that the Missouri statute, § 476.750 et seq., Mo.Rev.Stat., creates a liberty interest protected by the due process clause of the fourteenth amendment.
Defendants assert that plaintiff's due process claim under § 1983 is precluded by *1058 Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Court agrees. Under Sandin, a court considering a prisoner's claim that his due process rights were violated must first look to whether the plaintiff was subjected to a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 483, 115 S.Ct. at 2300. Only if the Court finds such an atypical and significant hardship should the court then look to whether state-created procedures should have been followed in imposing the deprivation. See, e.g., Freitas v. Ault, 109 F.3d 1335, 1337 (8th Cir.1997). Here, plaintiff on two occasions was subjected to thirty days disciplinary segregation, and his classification was changed. Despite the mandatory language of the state statute, neither of these deprivations is "atypical and significant" under Sandin. Defendants are therefore entitled to summary judgment on Count I of plaintiff's complaint.

B. Count II  Equal Protection

Count II is a claim brought under 42 U.S.C. § 1983 alleging that defendants violated plaintiff's right to equal protection by not providing him with interpreter services. An equal protection violation, however, may only be shown if plaintiff was treated disparately based on a suspect classification or if plaintiff was treated differently from similarly situated prisoners. A disability does not constitute a "suspect class" for equal protection analysis. See Hansen v. Rimel, 104 F.3d 189, 190 n. 3 (8th Cir.1997) (citing Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) and More v. Farrier, 984 F.2d 269 (8th Cir.) cert. denied, 510 U.S. 819, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993)).
Plaintiff has not alleged, nor could he allege, that he is treated differently from similarly situated inmates. His claim, like that of the plaintiff in Hansen, is that he is not similarly situated to hearing inmates for the purposes of participating in disciplinary hearings, medical care, and educational programs. Thus, defendants are entitled to summary judgment on plaintiff's claims in Count II.

C. Counts III and IV  ADA and Rehabilitation Act

Plaintiff alleges that defendants' actions violate the ADA and the Rehabilitation Act. Plaintiff argues that defendants failed to provide plaintiff with a sign language interpreter and failed to make reasonable accommodations for his disability at PCC, thereby preventing him from receiving the benefits of prison programs and services. Defendants argue that the ADA and the Rehabilitation Act do not apply to state prisons, and that even if they do apply, plaintiff is not entitled to relief.
The ADA prohibits, inter alia, public entities from excluding disabled individuals from participating in or receiving the benefits of the services, programs, or activities of the entity. 42 U.S.C. § 12132. The ADA defines a "public entity" as "any department, agency, special purpose district or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).
The Rehabilitation Act states that disabled individuals shall not be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Program or activity" is defined to include "all of the operations" of a "department, agency, special purpose district or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b).

1. Applicability of the Acts

Defendant argues that prisons are not "public entities" under the ADA, that prisons do not provide "services," "programs," or "activities" as those terms are used in the ADA, and that plaintiff cannot be considered a "qualified person with a disability" because he cannot meet "the essential eligibility requirements for the receipt of services or the participation in programs or activities," because inmates are not voluntarily in prison. Defendants also argue that under the principles of federalism and judicial restraint, the Court should decline to apply the antidiscrimination provisions of the ADA and Rehabilitation *1059 Act to inmates in state prisons. They contend that management of prisons is a "core state function" and that federal courts should refrain from impinging on that function unless congressional intent to do so is clearly expressed in the statutes; defendants argue that neither the ADA nor the Rehabilitation Act contains such a "clear statement." Defendants also argue that this Court should not apply the acts to them because defendants possess greater expertise at managing prisons than do courts.
The Eighth Circuit has not directly decided whether the ADA and the Rehabilitation Act apply to state prisons. In Lue v. Moore, 43 F.3d 1203 (8th Cir.1994), the plaintiff, a blind Missouri inmate, brought claims of unequal treatment under § 1983 and the Rehabilitation Act. The parties had assumed that the Rehabilitation Act applied in this circumstance. Id. at 1205. The court stated, "We agree that Lue can bring his claim for damages and affirmative relief under the [Rehabilitation] Act," but found that plaintiff had failed to state a claim. In Journey v. Vitek, 685 F.2d 239 (8th Cir.1982) the Court affirmed a trial court judgment for a prisoner on a Rehab Act claim where the correctional facility conceded that the prisoner had stated a cause of action. More recently, in Aswegan v. Bruhl, 113 F.3d 109 (8th Cir.1997), a plaintiff, who was housed in the prison infirmary, claimed the prison had violated the ADA by not providing cable TV access in his infirmary cell. Prisoners in general population had cable access, and the infirmary had two common televisions with cable access, which were readily available to plaintiff. After holding that "the cable television sought by Aswegan is not a public service, program or activity within the contemplation of the ADA," the Eighth Circuit stated that "we need not decide, and the district court should not have decided, whether correctional facilities are subject to the ADA." 113 F.3d at 110.
Other circuits are divided on the application of the ADA and Rehabilitation Act to inmates in state prisons. The Fourth Circuit, in a case relied on by the defendants, found that the antidiscrimination provisions of the ADA and Rehabilitation Act do not provide state inmates with a cause of action. See Torcasio v. Murray, 57 F.3d 1340 (4th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996). The Torcasio court relied upon the principles of federalism that defendants argue here. The court agreed that prison management is a core state function, found that Congress had not clearly subjected state prisons to the requirements of the ADA and Rehabilitation Act, and therefore found that defendants were entitled to qualified immunity. Id. at 1346. The Tenth Circuit held that a federal prisoner is not an "employee" for purposes of the Rehabilitation Act's employment provisions in Williams v. Meese, 926 F.2d 994 (10th Cir.1991). Later, in White v. Colorado, 82 F.3d 364, 367 (10th Cir.1996), that Court extended the Williams holding to hold that the ADA did not apply to an employment discrimination claim brought by a state prisoner.
In Bonner v. Lewis, 857 F.2d 559, 562 (9th Cir.1988), the Ninth Circuit reached the opposite result to find that a deaf inmate could have a cause of action under the antidiscrimination provision of the Rehabilitation Act. See also Duffy v. Riveland, 98 F.3d 447 (9th Cir.1996) (applying Bonner to suit brought by deaf prisoner under both the ADA and the Rehabilitation Act); Gates v. Rowland, 39 F.3d 1439, 1446 (9th Cir.1994). The Third Circuit also found that the acts applied in the prison setting, in considering a claim by a prisoner rejected from the state's prison boot camp program. Yeskey v. Commonwealth, 118 F.3d 168 (3d Cir.1997). Similarly, the Eleventh Circuit has held that the Rehabilitation Act provides a cause of action for handicapped state prisoners. Harris v. Thigpen, 941 F.2d 1495, 1522 (11th Cir.1991).
The reported decisions of trial courts are also divided. Compare, e.g., Herndon v. Johnson, 970 F.Supp. 703 (E.D.Ark.1997), Saunders v. Horn, 960 F.Supp. 893 (E.D.Pa. 1997), Niece v. Fitzner, 941 F.Supp. 1497 (E.D.Mich.1996), Clarkson v. Coughlin, 898 F.Supp. 1019 (S.D.N.Y.1995), and Noland v. Wheatley, 835 F.Supp. 476 (N.D.Ind.1993) (all holding that the ADA and/or Rehab Act apply to state prisons), with Gorman v. Bartch, 925 F.Supp. 653 (W.D.Mo.1996), appeal dism'd, 123 F.3d 1126 (8th Cir.1997), *1060 and Little v. Lycoming County, 912 F.Supp. 809 (M.D.Pa.1996), aff'd, 101 F.3d 691 (3d Cir.1996) (holding that the ADA and/or Rehab Act do not apply to state prisons).
The Court notes that the antidiscrimination provisions of the ADA and Rehabilitation Act contain broad language as they relate to state governments. Both statutes forbid discrimination by "department[s], agenc[ies] ... or other instrumentalit[ies] of a State." 42 U.S.C. § 12131(1)(B); 29 U.S.C. § 794(b)(1)(A). The statutes do not contain any language exempting prisons from the state agencies covered by the Acts.
Defendants argue that despite this broad language, prison inmates were never intended to benefit from the ADA and the Rehab Act. The Court disagrees, and finds that the broad language of both acts was intended to apply to all parts of state government, including prisons. At the time the ADA passed, several courts had already applied the Rehab Act to prison programs, and if Congress had not intended this result with regard to the ADA it could have said so. Defendants' language-based arguments, and those in Torcasio and cases following it, are tortured, at best. There can be no serious doubt that the Missouri Department of Corrections is a "department, agency ... or other instrumentality" of the State of Missouri, and the prisons operated by the Department of Corrections, and the programs operated by those prisons, are "programs or activities" of the Department of Corrections. This is the only logical way to read the plain language of the law. Defendants argue that a prison cannot be a "public entity" because it is not open to the public in the sense that members of the public may not walk in and join the prison's activities, but defendants' argued-for requirement of public access is simply nowhere to be found in the ADA or the Rehab Act. Similarly, defendants' argument that a prisoner cannot meet the "essential eligibility requirements" for prison services because prisoners are not voluntarily in prison is not in the statute. From the language of the statute it is no more likely that Congress intended to exempt state prisons than it is that it intended to exempt any other unnamed but otherwise covered state departments, agencies or instrumentalities.
The Court takes very seriously defendants' "core function" argument, and the Court agrees that interests of federalism require the Court to carefully assure that a federal statute was intended to apply to important state functions such as the operation of a prison. The broad language of ADA and Rehab Acts, however, shows that those acts were clearly intended to apply to all state agencies, including those that provide core state functions. The Court agrees that state prison administrators are in a far better position to run the prisons than are the Court. It was Congress, however, who decided that prisons should not discriminate against the disabled, and the Court may not ignore the plain language of the law, as defendants invite. Similarly, defendants' argument that "plaintiff has failed to plead or reference any statute which demonstrates a clear waiver of the state's immunity under the Eleventh Amendment" (Defendants' memorandum in support of their motion for summary judgment, at p. 29), is nothing more than a request that this Court engage in judicial activism by ignoring the laws as Congress wrote them. Congress specifically abrogated the states' eleventh amendment immunity in both the ADA and the Rehab Act. See 42 U.S.C. § 12202; 42 U.S.C. § 2000d-7(a)(1); see also Duffy, 98 F.3d at 452.

2. Individual Liability and Qualified Immunity

The individual defendants argue that even if the ADA and Rehab acts apply to a correctional facility, they are not properly named as defendants and that they are entitled to qualified immunity. The Court agrees with both of these arguments, and will therefore grant summary judgment to the individual defendants on Counts III and IV.
Nothing in Title II of the ADA or § 504 of the Rehab Act indicates that an individual employee of a "public entity" was intended to be individually liable for the public entity's violations of those acts. It is discrimination by the public entity that the statute forbids, and the Court believes that the Missouri Department of Corrections is *1061 the only proper defendant with regard to Counts III and IV.
Alternatively, the individual defendants are entitled to qualified immunity on plaintiff's claims under Counts III and IV. Government officials who are performing discretionary functions are generally shielded from liability for civil damages by qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), quoted in Hayes v. Long, 72 F.3d 70, 73 (8th Cir.1995). Defendants may rely upon this defense against claims brought under the ADA and Rehabilitation Act, as well as the § 1983 claim. Lue, 43 F.3d at 1205.
The Court agrees with defendants that, because of the lack of binding precedent in this Circuit interpreting the ADA and Rehab Act and the conflict in decisions from other circuits, the law was not clearly established at the time of the events in question. See also Allison v. Department of Corrections, 94 F.3d 494 (8th Cir.1996) (individual defendants, officials of Department of Corrections, entitled to qualified immunity in employment discrimination action brought under ADA by correctional officer).

3. The Merits of Plaintiff's ADA and Rehab Act Claims

Both plaintiff and defendants contend that there is no genuine dispute of material fact remaining in this case, and that they are each entitled to summary judgment. Defendants contend that plaintiff cannot recover because he did not request an interpreter each time he sought medical care and each time he received a conduct violation. They therefore claim that, as in Lue, plaintiff's claim is barred because he never applied for the services or programs and never sought accommodations. This argument is simply belied by the evidence. The undisputed evidence before the Court shows that plaintiff repeatedly requested a sign language interpreter to assist him with medical care, disciplinary proceedings and other programs, and that defendants repeatedly denied those requests. Although plaintiff may not have repeated his request before every visit to the nurse or at the beginning of each disciplinary hearing, he certainly repeatedly requested accommodation.
In order to raise a claim of discrimination under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability. Doe v. University of Maryland Medical System Corporation, 50 F.3d 1261, 1265 (4th Cir.1995); Heather K. v. City of Mallard, 946 F.Supp. 1373, 1383 (N.D.Iowa 1996). The Rehabilitation Act incorporates the same elements from the ADA with one addition: plaintiff must also show that the program or activity from which he is excluded receives federal financial assistance. See 29 U.S.C. § 794(a); Landefeld v. Marion General Hospital, Inc., 994 F.2d 1178, 1180-81 (6th Cir.1993); see also Thomlison v. City of Omaha, 63 F.3d 786, 788 (8th Cir.1995). Because the standards under the two statutes are largely the same, cases construing one statute are instructive in construing the other. Andrews v. State of Ohio, 104 F.3d 803, 807 (6th Cir. 1997); Wooten v. Farmland Foods, 58 F.3d 382, 385 n. 2 (8th Cir.1995).
The undisputed evidence shows that plaintiff is a disabled person within the meaning of the statutes and that he is otherwise qualified for the benefits in question, that is, the provision of medical care, educational training, and participation in disciplinary and classification proceedings. The undisputed evidence also shows that although he has been provided some form of those benefits, he has not received the full benefits solely because of his disability. In other words, it is clear that plaintiff has been discriminated against because of his disability. Although he has received medical care, he has not had full ability to communicate with his medical care providers, and the accommodations provided  patience on the part of the care giver and the use of written communications, do not fully accommodate his disability. Similarly, although he was provided with educational benefits, his disability *1062 was not accommodated in the provision of those benefits. For example, some of the educational programs were on video, but plaintiff cannot understand the videos. Again the accommodations provided by the prison system  patience by the teacher and the use of written communications  do not fully accommodate his disability. Plaintiff has been denied the full benefits of prison medical care and education because of his disability.
The failure of the prison to provide a sign language interpreter during disciplinary and classification hearings also violated the plaintiff's rights under the ADA and the Rehab Act. The undisputed evidence shows that plaintiff cannot fully understand these proceedings without assistance of an interpreter. Defendants urge that the evidence shows plaintiff can understand, but the Court believes there is no real dispute of fact in this regard. The evidence shows that numerous persons participated in the classification and disciplinary hearings, and that plaintiff could not possibly understand what was being said by all those people. Although plaintiff may have understood some of what was being said if the participants spoke slowly, and although the prison allowed him to read the charges against him (instead of simply having the charges read to him as would happen to a hearing prisoner), and to provide written statements, these accommodations are insufficient to provide plaintiff with the full benefit of the prison programs. It is also undisputed that PCC receives federal funds.
Defendant urges that the accommodations sought are unduly burdensome, and that having an interpreter on staff twenty-four hours a day or whenever plaintiff believed one should be present would be too expensive and cause a security risk. Plaintiff has repeatedly indicated he does not seek round-the-clock interpretation services. There is no evidence that providing an interpreter during non-emergency medical care, disciplinary or classification proceedings, or during scheduled educational programs would be unduly burdensome. All of the programs at issue here can be scheduled on twenty-four hours notice, and interpreters are available at a reasonable cost. Although normally whether a requested accommodation is unduly burdensome might be a question for the fact-finder, here the state legislature, in passing § 476.750, et seq., Mo.Rev.Stat., has determined that providing such services in the limited circumstances sought by plaintiff is not unduly burdensome. It is, after all, the state legislature that controls the defendants' budget, and the Missouri Department of Corrections should not be able to argue to this Court that the state legislature's determination is factually incorrect.
The Court concludes that the undisputed evidence shows that defendants have violated the ADA and the Rehab Act by failing to provide plaintiff with qualified sign-language interpreter services during his non-emergency medical care, educational programs, and disciplinary and classification hearings. Plaintiff is therefore entitled to summary judgment, and is entitled to the injunctive relief he seeks. Neither party, however, has put forth any evidence with regard to damages, and summary judgment is therefore not appropriate with regard to plaintiff's claim of damages as to the Missouri Department of Corrections.

D. Count V  Section 476.750, Mo.Rev. Stat.

In Count V, a pendent state claim, plaintiff alleges that defendants violated § 476.750 et seq., Mo.Rev.Stat. That statute requires that "a designated responsible authority shall provide" a qualified sign language interpreter for a deaf person. Mo. Ann. Stat. § 476.753.1 (Vernon Supp.1997). Defendants argue that the Missouri statute does not create a private cause of action, that the statute does not apply to prison hearings, and that plaintiff is not "deaf" as defined in the statute.
The statute defines "deaf person" as "any person who, because of a hearing loss, is not able to discriminate speech when spoken in a normal conversational tone regardless of the use of amplification devices." § 476.750(2), Mo.Rev.Stat. Defendant argues that plaintiff could be fitted with more appropriate hearing aids and therefore is not deaf. Both expert witnesses agreed, however, that although a different form of hearing aid *1063 would be more appropriate for plaintiff, he still would not be able to hear normally. The experts agreed that plaintiff has profound hearing loss, and even better hearing aids would not make him able to hear normal conversation. On the undisputed record before the Court, plaintiff is a "deaf person" as defined by the Missouri statute.
Defendants' argument that the statute does not apply to prisons because it also applies to court proceedings contradicts the plain language of the statute, which explicitly says that it applies to:
... any proceeding concerning the well-being or rehabilitation of a deaf person within a state prison, including, but not limited to, any disciplinary hearing, parole hearing, psychological evaluation/hearing, administrative hearing, sexual assault prevention program, counseling, medical care, any on-the-job or vocational training or any educational program.
Section 476.753.1(4), Mo.Rev.Stat.
Defendants argue that the Missouri statute does not provide plaintiff with a private cause of action. Under Missouri law, no private cause of action will be implied where "the legislature has established other means of enforcement," unless a private cause of action "appears by clear implication to have been the legislative intent." Johnson v. Kraft Gen. Foods, Inc., 885 S.W.2d 334, 336 (Mo.1994)(en banc); see also R.L. Nichols Insurance, Inc. v. Home Insurance Company, 865 S.W.2d 665 (Mo.1993) (en banc). On the other hand, where the legislature does not provide any other means of enforcement, a private right of action will be implied. See State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42, 672 S.W.2d 99, 109-10 (Mo.Ct.App.1984). This statute contains no means for enforcement, and therefore under Missouri law a private cause of action is implied.
Here there can be no genuine dispute but that the state statute requires defendants to provide plaintiff with a sign language interpreter during prison disciplinary or administrative hearings, medical care, and educational programs. There is no dispute that plaintiff, after asking for the services, was never provided them. Defendants were obviously aware of this statute: the undisputed evidence shows that the Missouri Department of Corrections notified PCC about the statute in February of 1994, and the tenor of the memo indicates that this was not the first notification. Additionally, the internal prison employee newsletter discussed the statute in March of 1994. Even after all this notice, defendants failed to provide plaintiff with a sign language interpreter during his disciplinary and classification hearings. Plaintiff made timely requests for interpreter services, both in his requests in 1989 and 1993 and in his various appeals from the disciplinary action.
Unlike the ADA and Rehab Acts, this statute by its terms imposes duties on a "designated responsible authority," in this case, the individual defendants responsible for providing such services. Each of the individual defendants here arguably meets the definition, although there is no evidence to show that defendant Bowersox ever violated the statute as to plaintiff. Additionally, although qualified immunity might apply to a claim under this statute, under the undisputed evidence here defendants are not entitled to qualified immunity, as the statutory right was clearly established and a reasonable official would have known he was violating the state statute, given the various notices about the statute distributed within PCC.
Plaintiff is entitled to summary judgment on his claim for injunctive relief as to the Department of Corrections. Genuine issues of fact remain, however, with regard to plaintiff's claim for damages and his claims against the individual defendants except Bowersox. Defendant Bowersox is entitled to summary judgment on this claim.

III. Conclusion

Defendants are entitled to summary judgment on Counts I and II of plaintiff's complaint. Defendants Bill Rodgers, Don Roper, Paul Delo, Michael Bowersox, and Dora Schriro are entitled to summary judgment on Counts III and IV as well, and Bowersox is entitled to summary judgment on Count V. Plaintiff is entitled to summary judgment on his claim for equitable relief against the Missouri *1064 Department of Corrections on Counts II, III and V, and is entitled to an injunction requiring defendant to provide him with interpreter services at all disciplinary and classification hearings, during all medical care other than emergency care, and during all educational courses. The issue of money damages remains for decision by a jury on Counts III and IV as to the Department of Corrections, and as to all defendants on Count V except Bowersox.
Because this court believes that this order involves controlling questions of law on which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation, the Court will certify the order as appealable pursuant to 28 U.S.C. § 1292(b), and the Court will stay enforcement of the injunctive relief granted herein pending resolution of these issues on appeal. Should the parties elect not to appeal, or should the Court of Appeals decline jurisdiction, the stay will be lifted and the case will be set for jury trial in the near future.
Accordingly,
IT IS HEREBY ORDERED that the plaintiff's motion for summary judgment [# 0] is granted in part as set forth herein as to Counts III, IV and V, and is denied in all other respects.
IT IS FURTHER ORDERED that defendants' motion for summary judgment [# 0] is granted as to Counts I and II, is granted as to Counts III and IV as to the individual defendants only, and is granted as to Count V only as to defendant Bowersox; defendants' motion is denied in all other respects.
IT IS FURTHER ORDERED that the Missouri Department of Corrections, and its agents, including any prison facility within which plaintiff is now or hereafter shall be confined, and all officers or persons having control of such prison facilities and its programs, shall hereafter provide plaintiff with sign language interpreter services whenever he is the subject of a non-emergency disciplinary or classification hearing, during all non-emergency medical care, and during any educational programs in which plaintiff participates.
IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1292(b), this order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from this order may materially advance the ultimate termination of the litigation.
IT IS FURTHER ORDERED that the injunctive relief ordered herein is stayed pending appeal or further order of this Court.