# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-1897

———————

Ronnie Randolph,

        Appellee,

   v.

Bill Rodgers; Don Roper; Paul Delo;   Appeal from the United States
Michael Bowersox; Dora Schriro,   District Court for the
Individually and in their official   Eastern District of Missouri.
capacities,

        Appellants,

Missouri Department of Corrections,

        Defendant.

———————

Submitted: January 12, 2001
Filed: June 12, 2001

———————

Before RICHARD S. ARNOLD, FAGG, and BOWMAN, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Ronnie Randolph, a deaf inmate at the Jefferson City Correctional Center (JCCC), brought suit against the Missouri Department of Corrections (MDOC) and five prison officials for failing to provide him with a sign-language interpreter during

disciplinary proceedings, the administration of medical care, and certain other prison proceedings while he was incarcerated at the Potosi Correctional Center (PCC) from 1989 to 1996. The Eleventh Amendment shields the State and the MDOC from many of Randolph's claims; this appeal considers the extent to which Randolph can avoid the bar of Eleventh Amendment immunity and obtain injunctive relief under Ex parte Young, 209 U.S. 123 (1908) (requiring state officials to comply with federal law).

I.

Randolph sued the MDOC and the named prison officials in their individual and personal capacities. He raised claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (1994 & Supp. II 1996); § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1994); 42 U.S.C. § 1983 (1994) and Missouri law.[1] The District Court granted summary judgment for the MDOC and the prison officials on the due process and equal protection claims that Randolph asserted under § 1983, and for the prison officials in their individual capacities on the ADA and Rehabilitation Act claims.[2] Randolph v. Rodgers, 980 F. Supp. 1051, 1057-58, 1060-61 (E.D. Mo. 1997) (subsequent history omitted). The court granted summary judgment for Randolph as to the injunctive relief sought against the MDOC on the ADA, Rehabilitation Act, and state-law claims, id. at 1061-63, and reserved for trial Randolph's ADA and Rehabilitation Act claims seeking money damages against the MDOC, and the state-

---

[1]This interlocutory appeal is concerned with questions of law. For a more detailed factual background see Randolph v. Rodgers, 980 F. Supp. 1051, 1054-57 (E.D. Mo. 1997) (subsequent history omitted).

[2]The court did not separately discuss the claims against the named prison officials in their individual and official capacities. Instead, the court apparently dismissed the ADA and Rehabilitation Act claims against the prison officials in their entirety. The District Court's subsequent March 2, 2000, Memorandum and Order, however, clarified that Randolph may still maintain his ADA and Rehabilitation Act claims for injunctive relief against the prison officials in their official capacities.

law claim seeking damages against the named prison officials. The District Court also issued a permanent injunction that mandated sign-language interpreter services for Randolph during various prison proceedings and activities. Id. at 1064. The State brought an interlocutory appeal. We reversed the District Court's order granting Randolph's motion for summary judgment against the MDOC on the ADA, Rehabilitation Act, and state-law claims; vacated the injunction; and remanded the case to the District Court for further proceedings. Randolph v. Rodgers, 170 F.3d 850, 860 (8th Cir. 1999).

Upon remand, the State moved to dismiss, arguing that Randolph's claims are prohibited by the Eleventh Amendment.[3] The District Court granted the State's motion in part, and dismissed the ADA and Rehabilitation Act claims against the MDOC and the state-law claims for injunctive relief against the prison officials in their official capacities. The District Court allowed Randolph's ADA and Rehabilitation Act claims "for prospective injunctive relief . . . against the state official defendants in their official capacities" to proceed under Ex parte Young. Mem. and Order at 4. The District Court also allowed Randolph to maintain his state-law claims for money damages against the state officials in their individual capacities.

The State brings this interlocutory appeal arguing that the District Court erred in applying Ex parte Young and that the District Court should have dismissed Randolph's remaining ADA and Rehabilitation Act claims against the prison officials in their official capacities on Eleventh Amendment immunity grounds. We affirm and remand for further proceedings.

---

[3]Missouri did not waive its Eleventh Amendment immunity by failing to raise the defense at the outset of the proceedings. Cf. Edelman v. Jordan, 415 U.S. 651, 678 (1974) (holding that Eleventh Amendment immunity may be raised for the first time on appeal).

II.

As a preliminary matter, we note that we have jurisdiction over this interlocutory appeal under the collateral-order doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-47 (1949); see, e.g., Murphy v. Arkansas, 127 F.3d 750, 753-54 (8th Cir. 1997) (noting that an order denying a claim of Eleventh Amendment immunity is properly appealable as a collateral order). We review de novo a district court's disposition of a motion to dismiss. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997).

A.

The State argues that the District Court erred in permitting Randolph's ADA claims to proceed against the individual prison officials under Ex parte Young.[4] Ex parte Young and its progeny teach that a private party may seek prospective injunctive relief in federal court against a state official, even if the state is otherwise protected by Eleventh Amendment immunity. See, e.g., Green v. Mansour, 474 U.S. 64, 68 (1985).

As a threshold jurisdictional matter, we hold that the Ex parte Young ADA and Rehabilitation Act claims are moot with respect to four of the five prison officials. These four officials—Rodgers, Roper, Delo, and Bowersox—were employed at PCC

_____

[4]Randolph concedes the District Court correctly granted immunity to the MDOC from Randolph's ADA claim. We held in Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999) (en banc), cert. granted, 528 U.S. 1146, cert. dismissed, 529 U.S. 1001 (2000), "that the extension of Title II of the ADA to the states was not a proper exercise of Congress's power under Section 5 of the Fourteenth Amendment. Consequently, there is no valid abrogation of [the State's] Eleventh Amendment immunity from private suit in federal court and the district court lacked subject matter jurisdiction over the ADA claim." Cf. Bd. of Trs. of Univ. of Ala. v. Garrett, 121 S. Ct. 955 (2001) (holding that suits in federal court by state employees seeking money damages for violations of Title I of ADA are barred by Eleventh Amendment).

while Randolph was an inmate at that facility. All were involved to varying degrees with decisions about whether to provide Randolph a sign-language interpreter. In 1996, the MDOC transferred Randolph from PCC to JCCC, where he is currently incarcerated. Rodgers, Roper, Delo, and Bowersox remained employed at PCC after the transfer.[5]

As we noted earlier, Ex parte Young permits only prospective injunctive relief against state officials. With Randolph currently imprisoned at JCCC and Rodgers, Roper, Delo, and Bowersox employed at PCC, any prospective injunctive relief based upon the ADA and Rehabilitation Act claims as to those four defendants will be of no consequence to Randolph. See Beck v. Mo. State High Sch. Activities Ass'n, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam) (noting that a case is moot when circumstances change to such a degree that "a federal court can no longer grant effective relief"). The actions required by an injunction would be impossible for those four defendants to execute; their authority and power is limited solely to PCC, and any injunctive relief would necessarily be directed at accessibility to hearing-impaired services at JCCC. See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (concluding that claim for injunctive relief against warden was moot because prisoner was transferred to another prison).[6] Dora Schriro, however, has authority over the entire MDOC and an

---

[5]The fifth official, Dora Schriro, was, and continues to be, the director of the MDOC.

[6]Our previous opinion in this case addressed the mootness issue in part and concluded that the claims for equitable relief were not moot because the MDOC had control over both the PCC and JCCC and an injunction would compel the MDOC to provide hearing-impaired services for Randolph no matter where in the MDOC system he was incarcerated. Randolph, 170 F.3d at 856-57. We agree with the limited mootness holding of Randolph, and we take the next logical step: where the MDOC is protected by Eleventh Amendment immunity and the sued prison officials have no control or authority over an injunction requiring services in another prison, then the Ex parte Young ADA and Rehabilitation Act claims against those defendants are moot.

injunction against her would have effect no matter where in the MDOC system Randolph is incarcerated. The Ex parte Young ADA and Rehabilitation Act claims are moot with respect to Rodgers, Roper, Delo, and Bowersox but may proceed against Schriro.[7]

The State next contends that the existence of a detailed remedial scheme in the ADA precludes Randolph from relying on Ex parte Young. The State relies upon Seminole Tribe of Florida v. Florida, 517 U.S. 44, 74 (1996), wherein the Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young." The State then points to our holding in Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc), cert. granted, 528 U.S. 1146, cert. dismissed, 529 U.S. 1001 (2000), where we concluded that Title II of the ADA provides a detailed remedial scheme barring a § 1983 action against state officials in their individual capacities.

We agree with the District Court that Randolph's Ex parte Young ADA claim is not governed by Alsbrook's holding that Title II of the ADA contains a comprehensive remedial scheme. The remedies available to the plaintiff in Alsbrook under Title II of the ADA are entirely different from those available to Randolph. The enforcement provision of Title II of the ADA, 42 U.S.C. § 12133, incorporates 29 U.S.C. § 794a (1994), the remedies provision of the Rehabilitation Act. The appropriate remedy under the Rehabilitation Act depends on the status of the plaintiff. Employees and applicants for employment, such as the plaintiff in Alsbrook, are subject to the

---

[7]Randolph's concern that the defendants may escape liability by continuing to transfer him within the MDOC is not well-founded. An Ex parte Young injunction against Schriro in her official capacity would be binding upon her successor if Schriro were to leave her position as director of the MDOC.

subsection of the ADA that tracks 28 U.S.C. § 791 and incorporates the remedies of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) to (k). 29 U.S.C. § 794a(a)(1). The remedies found in § 2000e-5(f) to (k) are highly detailed and constitute a comprehensive remedial scheme.[8] Alsbrook, 184 F.3d at 1011.

Aggrieved persons who are not employees or applicants for employment, such as prisoners like Randolph, are subject to the subsection of § 794a that tracks 29 U.S.C. § 794 and incorporates the remedies of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d-7. 29 U.S.C. § 794a(a)(2). Title VI and the regulations promulgated thereunder provide for judicial review following a federal department or agency's determination that a program or activity receiving federal funds has violated Title VI.[9] An aggrieved individual, however, may proceed directly to federal court on

---

[8]Whether a government employee, such as the plaintiff in Alsbrook, must exhaust administrative remedies before filing a claim under Title II of the ADA is a question we need not answer here. Needless to say, there is a strong conflict between the exhaustion requirements of the three applicable statutes: Title VII of the Civil Rights Act of 1964 and Title I of the ADA both require exhaustion of administrative remedies, and Title II of the ADA does not. Title II of the ADA, however, adopted the remedial provision of the Rehabilitation Act, 42 U.S.C. § 12133, and incorporated the remedies and procedures of Title VII, 29 U.S.C. § 794a. See generally Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169,1173-84 (9th Cir. 1999), cert. denied, 121 S. Ct. 1186 (2001). Because Title II of the ADA has two different remedial provisions, it is necessary to note that this opinion only addresses plaintiffs encompassed by Title II of the ADA's incorporation of the Title VI remedial provision.

[9] While neither Title II of the ADA nor Title VI of the Civil Rights Act of 1964 expressly authorizes a private cause of action, it has been held that Title VI has an implied private cause of action that Title II of the ADA incorporates. See Parker v. Universidad de Puerto Rico, 225 F.3d 1, 8 (1st Cir. 2000) (recognizing implied private cause of action under Title VI of the Civil Rights Act of 1964 and applying it to claim under Title II of the ADA); cf. Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 72-73 (1992); Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 594-95 (1983). The State has not challenged Randolph's standing as a private litigant under Title II of

a claim under Title II of the ADA.[10]  Unlike the plaintiff in <u>Alsbrook</u>, Randolph was not limited by a comprehensive remedial scheme established under Title II of the ADA and Title VII of the Civil Rights Act of 1964.  Instead, the path was open for him to bring an action directly in federal court.[11]  Accordingly, <u>Seminole Tribe</u> and <u>Alsbrook</u> do not prohibit Randolph from proceeding under <u>Ex parte Young</u>.

_____

the ADA, and we therefore decline to analyze the issue.

[10]Congress granted the Attorney General explicit authority to promulgate regulations implementing Title II of the ADA.  42 U.S.C. § 12134(a) (1994).  The regulations provide, <u>inter alia</u>, that while a complainant may avail himself of the administrative grievance procedures outlined elsewhere in the regulations, administrative exhaustion is unnecessary and he may file suit in federal court at any time.  <u>See</u> 28 C.F.R. § 35.172(b) (2000) ("At any time, the complainant may file a private suit pursuant to section 203 [42 U.S.C. § 12133] of the Act . . .").  The accompanying comment confirms that position:

> The [ADA] requires the Department of Justice to establish administrative procedures for resolution of complaints, but does not require complainants to exhaust these administrative remedies.  The Committee Reports make clear that Congress intended to provide a private right of action with the full panoply of remedies for individual victims of discrimination.  Because the [ADA] does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time.

28 C.F.R. pt. 35, app. A at 501 (2000).

[11]The State argues that the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (Supp. IV 1998), required Randolph to exhaust all administrative remedies available in the prison system and under Title II of the ADA before filing suit.  As we held the first time this case was before us, the PLRA issue was not raised in the District Court and the State has "waived the argument on appeal." <u>Randolph</u>, 170 F.3d at 857 n.8.

Here, the District Court's injunction ordering future compliance with the ADA with respect to hearing-impaired services for Randolph was narrowly written to merely reiterate the existing duty that the state officers owe Randolph under the ADA.[12]  The order in this case does not require, as the State contends, "retrospective" monetary relief for past violations of the ADA.  Rather, the cost of compliance to the state treasury is wholly "ancillary" to the prospective order enforcing federal law.  Edelman v. Jordan, 415 U.S. 662, 668 (1974); see also Papasan v. Allain, 478 U.S. 265, 278 (1986) (holding that while injunctive relief ordered by District Court may have "substantial ancillary effect on the state treasury," Ex parte Young suit may proceed so long as injunctive relief "serves directly to bring an end to a present violation of federal law").  Any state funds expended for Randolph's hearing-impaired services could only be the result of prospective compliance with the injunction.

The State finally argues that because the statutory language of the ADA provides only for "public entity" liability, an Ex parte Young claim against the state officials in their official capacities, premised upon an ADA violation, must fail.  We agree that the public-entity limitation precludes ADA claims against state officials in their individual capacities, see Alsbrook, 184 F.3d at 1005 n.8, a conclusion we drew in Alsbrook solely from the plain language of the ADA, but we never have held that the public-entity limitation in the ADA prohibits Ex parte Young claims against state officers in their official capacities.  Nor have we ever held that the underlying federal statute relied

---

[12]Congress enacted the ADA invoking its powers under both Section 5 of the Fourteenth Amendment and the Commerce Clause.  42 U.S.C. § 12101(b)(4) (1994).  While Alsbrook held Title II of the ADA beyond Congress's power under Section 5 of the Fourteenth Amendment (and the court accordingly recognized the Eleventh Amendment immunity of the States and their agencies from such claims), we recognize that Title II of the ADA still applies to the States as an exercise of Congress's power under the Commerce Clause.  Because the parties did not raise the issue, we assume for purposes of this opinion that the ADA was a constitutional exercise of Congress's power under the Commerce Clause.

upon in an Ex parte Young claim must provide explicit statutory authority to sue a state official in his official capacity. Ex parte Young simply permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law. 209 U.S. at 159-60. We believe the District Court did not err by holding that Randolph may proceed under Ex parte Young to seek prospective injunctive relief on his ADA and Rehabilitation Act claims against Schriro in her official capacity. Cf. Bd. of Trs. of the Univ. of Ala. v. Garrett, 121 S. Ct. 955, 968 n.9 ("Title I of the ADA still prescribes standards applicable to the States . . . [that] can be enforced . . . by private individuals in actions for injunctive relief under Ex parte Young").

B.

In allowing Randolph's Rehabilitation Act claim to proceed against Schriro (and the named prison officials as to whom we have now held the case to be moot) for prospective injunctive relief under Ex parte Young, the District Court noted that Eleventh Amendment immunity protected the MDOC from suit on that claim. Mem. and Order at 4. The District Court's holding was based upon Bradley v. Arkansas Department of Education, where we held that § 504 of the Rehabilitation Act was beyond the scope of Congress's power under Section 5 of the Fourteenth Amendment and an impermissible exercise of Congress's Article I spending power. 189 F.3d 745, 756, 758, vacated in part, en banc reh'g granted in part sub nom. Jim C. v. Ark. Dep't of Educ., 197 F.3d 958 (8th Cir. 1999). Since the District Court issued its order, we revisited the spending power issue of Bradley en banc, and concluded that, on the facts in that case, the waiver by the Arkansas Department of Education of Eleventh Amendment immunity from § 504 claims was given in consequence of a proper exercise of Congress's spending power. Jim C. v. United States, 235 F.3d 1079, 1081-82 (8th Cir. 2000) (en banc), petition for cert. filed, 69 U.S.L.W. 3646 (U.S. Mar. 22, 2001) (No. 00-1488).

We agree with the District Court that the <u>Ex parte Young</u> Rehabilitation Act claim may proceed against Schriro.[13] With the legal landscape altered since the District Court issued its order, if Randolph wishes to pursue his Rehabilitation Act claim against the MDOC, he will need to show that the MDOC waived its Eleventh Amendment immunity with respect to § 504 of the Rehabilitation Act in order to receive federal funds and that the waiver is valid under the Spending Clause. If the District Court were to find that the MDOC has made a valid waiver of its immunity, the Eleventh Amendment then could no longer limit Randolph's remedy for his Rehabilitation Act claim to equitable relief against Schriro under <u>Ex parte Young</u>. Instead, Randolph would be able to proceed against the MDOC on his § 504 claim, seeking damages as well as equitable relief. <u>See</u> 42 U.S.C. § 2000d-7(a)(2); <u>Gorman v. Bartch</u>, 152 F.3d 907, 911 (8th Cir. 1998) ("Plaintiffs who prevail on Rehabilitation Act claims are entitled to the full spectrum of legal and equitable remedies needed to redress their injuries."); <u>Rodgers v. Magnet Cove Pub. Sch.</u>, 34 F.3d 642, 645 (8th Cir. 1994) ("[M]oney damages are available under § 504.").

## III.

In sum, we dismiss as moot the <u>Ex parte Young</u> ADA and Rehabilitation Act claims against Rodgers, Roper, Delo, and Bowersox in their official capacities. We affirm the District Court's holding that Randolph's <u>Ex parte Young</u> ADA and Rehabilitation Act claims against Dora Schriro may proceed. Finally, if Randolph wishes to pursue his Rehabilitation Act claim against the MDOC, he must make the Spending Clause showing referred to in the concluding paragraphs of Part II of this opinion.

---

[13]Title II of the ADA incorporates the remedies provision of the Rehabilitation Act, 29 U.S.C. § 794a, and the analysis of ADA remedies in Part IIA of this opinion therefore applies equally to Randolph's <u>Ex parte Young</u> Rehabilitation Act claim, except to the extent the analysis may depend on regulations unique to Title II.

This case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.