63 F.3d 786
 4 A.D. Cases 1319
 Ann THOMLISON, Appellee/Cross-Appellant,
v.
CITY OF OMAHA, a municipal corporation; Horton A.
Dahlquist, Chief of Fire Division,
Appellants/Cross-Appellees,
Alfred Pattavina, Public Safety Director; Thomas Marfisi,
Labor Relations Director, Defendants.
 Nos. 94-3500, 94-3598.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1995.
Decided Aug. 25, 1995.
 
 Sheri Ellen Long, Omaha, NE, argued, for appellant/cross-appellees.
 Julie A. Frank, Omaha, NE, argued (Judy K. Hoffman, Omaha, NE, on brief), for appellee/cross-appellant.
 Before BEAM, Circuit Judge, ROSS, Senior Circuit Judge, and MURPHY, Circuit Judge.
 BEAM, Circuit Judge.
 
 
 1
 The city of Omaha terminated Ann Thomlison's employment as a firefighter. Thomlison filed suit, alleging that the City and various city employees (collectively, the City) unlawfully discriminated against her in violation of the Rehabilitation Act, Title VII and 42 U.S.C. Sec. 1983.[1] A jury found in favor of Thomlison on both her Rehabilitation Act and section 1983 claims, and awarded her $98,230 in compensatory damages. The district court initially entered judgment on those verdicts, found in favor of Thomlison on her Title VII disparate impact claim, and ordered the City to reinstate her.
 
 
 2
 After reviewing the defendants' post-trial motions for judgment as a matter of law, the district court vacated the jury verdict on Thomlison's section 1983 claim, vacated its finding on the Title VII claim and entered judgment as a matter of law for the defendants on those claims. The district court did not disturb the Rehabilitation Act verdict, the full damage award, or the reinstatement order. The court then awarded Thomlison attorney's fees. Both sides appeal. We affirm the district court's judgment in all respects except for the reinstatement order and award of attorney's fees, which we remand for reconsideration in accordance with this opinion.I. BACKGROUND
 
 
 3
 Thomlison was among the first female firefighters hired by the Fire Division of the city of Omaha.[2] During the application process, on July 7, 1987, Thomlison completed a medical examination form. The form required Thomlison to "list all ... serious illnesses, injuries or operations." Although Thomlison had outpatient surgery on her right foot to remove a neuroma in July 1986, and she had been regularly treated by a podiatrist, Dr. Klawitter, for various foot and ankle problems, she did not think that this treatment constituted a serious medical problem requiring inclusion on the form.
 
 
 4
 On August 17, 1987, Thomlison started working as a firefighter-trainee. After Thomlison successfully completed her training and became a probationary firefighter, she encountered several difficulties. Most significantly, much of the required firefighting equipment was too big and did not fit her. For example, the equipment-carrying belt the City issued her was so large that when she attached equipment, such as an axe, to it, the equipment dragged on the ground. To prevent dragging the equipment on the ground, Thomlison cinched the belt beneath her armpits, substantially restricting her movements. Thomlison had similar problems with shoes and gloves.
 
 
 5
 While working as a probationary officer, Thomlison was twice injured on duty. In March 1988, Thomlison injured her ankle while stepping from a fire truck. This injury caused her to miss part of one work shift. In April 1988, Thomlison suffered a back injury while cleaning up an area after a fire. Thomlison's physician diagnosed her condition as spondylolisthesis, vertebral forward slippage caused by a congenital defect, and prescribed physical therapy. This back problem caused her to miss fourteen days of work between April 3, 1988, and May 16, 1988. Eventually, Thomlison's treating physician released her to return to work.
 
 
 6
 Around April 6, 1988, the City began an investigation of Thomlison's medical condition to determine whether she was still qualified to be a firefighter. During this investigation, the City discovered that she had seen Dr. Klawitter regularly for approximately two years. The ongoing treatment made the City suspect that Thomlison had willfully falsified the medical examination form. On May 23, 1988, Thomlison met with the Fire Chief, Horton A. Dahlquist, and City Labor Relations Director, Thomas Marfisi. At that time, she was questioned about potential omissions on the medical exam form. Fire Chief Dahlquist then forwarded Thomlison's file to the Public Safety Director, Pattavina. On June 15, 1988, Thomlison was notified by letter that she was terminated. The letter, signed by Pattavina, listed cause for the termination as the alleged falsification of the medical exam form.
 
 
 7
 As previously indicated, Thomlison then filed suit, alleging that the City and various city employees unlawfully discriminated against her. Although the district court initially awarded remedies on several grounds, the court ultimately granted the same relief based only on Thomlison's Rehabilitation Act claim. On appeal, the defendants contend that the district court erred in finding the City subject to the Rehabilitation Act; finding the evidence sufficient to sustain the Rehabilitation Act verdict; failing to give a particular jury instruction relating to the City's defense; ordering Thomlison reinstated; and approving entry of judgment for $98,230. Thomlison argues that the district court erred in granting the defendants' motions for judgment as a matter of law on her Title VII and section 1983 claims; failing to give a certain jury instruction relating to damages; and reducing the attorney's fees award.
 
 II. DISCUSSION
 A. Propriety of a Rehabilitation Act Claim
 
 8
 The City argues that relief based on Thomlison's Rehabilitation Act claim is inappropriate because the Fire Division does not receive federal financial assistance, and as such, does not qualify as a "program" or "activity" within the meaning of the Rehabilitation Act.
 
 
 9
 The Rehabilitation Act, as amended, defines "program" or "activity" to include "all of the operations of--(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; ... any part of which is extended Federal financial assistance." 29 U.S.C. Sec. 794(b)(1)(A). This definition is inclusive. For example, " '[i]f the office of a mayor receives federal financial assistance and distributes it to local departments or agencies, all of the operations of the mayor's office are covered along with the departments or agencies which actually get the aid.' " Schroeder v. City of Chicago, 927 F.2d 957, 962 (7th Cir.1991) (quoting S.Rep. No. 64, 100th Cong., 2d Sess. 16 (1988) U.S.Code Cong. & Admin.News 1988, pp. 3, 18.).
 
 
 10
 The City contends that the defining unit for purposes of the Rehabilitation Act is the Fire Division. Because no part of the Fire Division receives federal assistance, the City argues that it is not subject to the Rehabilitation Act. We think that the City draws too fine a line. Throughout Thomlison's employment, the Fire Division comprised part of the Public Safety Department.[3] The Public Safety Department also contained the Police and Communications Divisions. Although the Fire Division did not receive any federal assistance directly, other Public Safety Department divisions, including the Police Division, received federal funds. Because the definition of program or activity covers all the operations of a department, here the Public Safety Department, and part of the Department received federal assistance, the entire Department is subject to the Rehabilitation Act.
 
 
 11
 B. Rehabilitation Act Claim: Sufficiency of the Evidence
 
 
 12
 The City argues that insufficient evidence supports the jury's verdict for Thomlison on her Rehabilitation Act claim. Because Chief Dahlquist's superior, Pattavina, actually fired Thomlison, the City argues that a jury could not find discriminatory intent.
 
 
 13
 We disagree. When reviewing the sufficiency of the evidence, we view the "evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." Smith v. World Ins., 38 F.3d 1456, 1460 (8th Cir.1994) (internal quotation omitted). Although it is a close call, we agree with the district court that the evidence is sufficient to support the jury's verdict. A strong temporal connection exists between Thomlison's medical condition and the sudden discovery of the alleged falsification. Viewing the evidence in the light most favorable to Thomlison, a jury could rationally infer that the Fire Division began treating Thomlison differently due to a perception about her medical condition. This perception could have been communicated to Pattavina, who merely rubber-stamped Chief Dahlquist's recommendations when signing the termination letter. As such, the district court correctly concluded that sufficient evidence exists to sustain the verdict.
 
 C. Appropriateness of Reinstatement
 
 14
 The City argues that the district court abused its discretion by ordering reinstatement because Thomlison has not demonstrated that she still retains the level of physical fitness required to be a firefighter. Although the City misplaces the applicable burden of proof, it does raise an important issue.
 
 
 15
 When awarding relief based on intentional discrimination, the district court generally has discretion to require reinstatement. See, e.g., Miener v. State of Missouri, 673 F.2d 969, 977 (8th Cir.) ("federal courts may use any available remedy to make good the wrong"), cert. denied, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); Taylor v. Teletype Corp., 648 F.2d 1129, 1138-39 (8th Cir.) (discussing reinstatement in Title VII context), cert. denied, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981); Henry v. Lennox Indus., 768 F.2d 746, 753 (6th Cir.1985) (same). Failure to currently satisfy bona-fide job requirements, however, is a special circumstance that may render reinstatement inappropriate.
 
 
 16
 When analyzing whether a former employee is currently qualified for reinstatement, a presumption exists that the former employee remains qualified to perform the job. The burden shifts to the employer to prove the absence of current qualifications. See, e.g., Ford v. Nicks, 866 F.2d 865, 875 (6th Cir.1989) (placing burden on employer). This allocation is consistent with our approach to employer defenses for other damages. See, e.g., Paxton v. Union Nat'l Bank, 688 F.2d 552, 574 (8th Cir.1982) (when determining back pay, after initial gross pay amount is determined, burden shifts to employer to demonstrate a reason for reduction), cert. denied, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).
 
 
 17
 In this instance, the City argued that Thomlison no longer met the physical fitness standards for a firefighter. The district court granted reinstatement without making any explicit determination on this issue. Given the importance of public safety and the potential hazards involved in requiring the City to employ an unfit worker, we find such an explicit determination necessary.
 
 
 18
 Consequently, we reverse the district court's order of reinstatement and remand for a determination of whether Thomlison is physically fit (or can become physically fit within a reasonable period of time) to perform the duties of a firefighter. We emphasize that the City retains the burden of demonstrating that Thomlison is unfit. If she does not currently possess the physical fitness necessary to perform firefighting duties, however, the district court may want to grant front pay or permit a provisional reinstatement conditioned on Thomlison obtaining the required level of fitness within a specified period of time.
 
 D. Jury Instructions: Amount of Damages
 
 19
 The City argues that the damage award is excessive because the back pay portion may have included the period of time in which Thomlison removed herself from the job market and became a full-time student at Dr. Welbes' School of Massage Therapy. Thomlison, of course, denies that she was out of the job market at any time.
 
 
 20
 The City frames this argument as an excessive damages argument. Because the jury, and not the judge determined the amount of the award, however, we find that the City's argument is more properly characterized as an attack on the jury instruction on damages. Although the damage instruction given by the district court did not discuss Thomlison's school attendance, the City did not object to this omission. Thus, although the City's argument may have had some merit, see Washington v. Kroger, 671 F.2d 1072 (8th Cir.1982), we will not disturb the verdict because the City did not preserve this objection. Phillips v. Parke, Davis & Co., 869 F.2d 407, 409 (8th Cir.1989); Fed.R.Civ.P. 51.
 
 
 21
 We acknowledge that the district court has a duty to instruct the jury on the applicable law. In doing so, however, the court is not required to present or frame arguments for the parties. In this case, the City did not articulate its school-related objection before the case was submitted to the jury. The school attendance involves a nontraditional school, and it is not immediately obvious that the bar on back pay damages during attendance should apply. These factors confirm our conclusion that the district court should have been given the opportunity to consider the City's job market claim when formulating the applicable jury instruction.
 
 
 22
 E. Jury Instructions: Miscellaneous Objections
 
 
 23
 Both parties appeal jury instructions given by the district court. The City argues that the district court improperly refused to give a particular instruction relating to false statements. Thomlison argues that the district court improperly refused her instruction on "moonlighting."
 
 
 24
 We apply a deferential standard when reviewing a district court's jury instructions, reversing only for an abuse of discretion. Hoselton v. Metz Baking Co., 48 F.3d 1056, 1062 (8th Cir.1995). "In considering the failure of a district court to give a requested instruction, the omission is error only if the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." Wood v. President & Trustees of Spring Hill College, 978 F.2d 1214, 1221 (11th Cir.1992). After reviewing the parties' jury instruction arguments and the jury instructions given by the district court, we conclude that the district court did not err in omitting the requested instructions.
 
 F. Title VII and Section 1983 Claims
 
 25
 Thomlison argues that the district court erred in entering judgment as a matter of law for the defendants on her Title VII and section 1983 claims of sex discrimination. We need not reach this allegation, however, because Thomlison has not alleged that she has been prejudiced by the district court's actions. Initially, the district court granted Thomlison substantial relief--the damage award and reinstatement--based on her section 1983, Title VII and Rehabilitation Act claims. The court ultimately entered judgment granting the full relief based only on Thomlison's Rehabilitation Act claim. We recognize that the district court's action deprived Thomlison of the psychological satisfaction of complete vindication. Because the district court's judgment preserved her full monetary and other relief, however, we find that the district court's error, if any, was harmless. See Farmland Indus. v. Morrison-Quirk Grain Corp., 54 F.3d 478, 483 (8th Cir.1995).
 
 G. Attorney's Fees
 
 26
 After entry of judgment in her favor, Thomlison applied for an award of attorney's fees for both plaintiff attorneys: an award of 240.95 hours for lead counsel Julie Frank and an award of 115 hours for assistant counsel Judy Hoffman.[4] Both counsel requested an hourly fee of $160. In view of what it described as the limited success of Thomlison's case, the district court determined that a reasonable number of hours was 178, attributing 128 hours to Julie Frank and 50 hours to Judy Hoffman. The district court also found that, given the level of difficulty of the case, $125 was a more reasonable hourly rate. Thomlison contends that the district court abused its discretion in reducing the award of attorney's fees.
 
 
 27
 We agree in part. The district court reduced the number of hours based primarily on Thomlison's "limited success." The court reasoned that such a reduction was appropriate because Thomlison ultimately prevailed on only one of her three major causes of action: the Rehabilitation Act claim. This rationale fails to account for the full relief that the district court imposed. Although the district court removed two of the underlying statutory bases for the relief, it did not otherwise modify the relief in any form. As such, it is difficult to characterize the outcome as providing Thomlison with only limited success. See Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (emphasizing the central role of damages when determining the appropriateness of attorney's fees). In addition, a strong interrelationship exists between Thomlison's various discrimination claims. See Hensley v. Eckerhart, 461 U.S. 424, 434-35, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983). This interrelationship makes separating the number of hours spent on each claim difficult. For these reasons, we find that the district court abused its discretion in reducing the number of attorney hours requested by Thomlison.
 
 
 28
 After considering the level of difficulty of this case, however, we find that the district court's reduction of the hourly rate is appropriate. See Id. at 437, 103 S.Ct. at 1941. Consequently, we reverse the district court's reduction of attorney's fees and remand for entry of the full hours requested at the rate of $125 per hour.III. CONCLUSION
 
 
 29
 For the foregoing reasons, we affirm in part and reverse in part, remanding this case to the district court for proceedings consistent with our opinion.
 
 
 
 [1]
 The complaint also alleged that the City had violated other laws. Those allegations are not relevant to this appeal
 
 
 [2]
 During Thomlison's employment, the Fire Division was a part of the Public Safety Department. The Public Safety Director was Alfred Pattavina
 
 
 [3]
 By the time of trial, Omaha had abolished the Public Safety Department, making each division into an autonomous department
 
 
 [4]
 As a prevailing party under the Rehabilitation Act, Thomlison is authorized to receive attorney's fees. See 29 U.S.C. Sec. 794a(b)