# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4259

_____

Ronnie Randolph,                              *
                                             *
                    Appellee,                *
        v.                                    *
                                             *
Bill Rodgers, Don Roper, Paul Delo,          *   Appeal from the United States
Michael Bowersox, Dora Schriro,              *   District Court for the
individually and in their official           *   Eastern District of Missouri
capacities, and the Missouri                 *
Department of Corrections,                    *
                                             *
                    Appellants.              *

_____

Submitted: January 12, 1999
Filed: March 19, 1999

_____

Before BOWMAN, Chief Circuit Judge, MURPHY, Circuit Judge, and ALSOP,[1]
        District Judge.

_____

ALSOP, District Judge.

---

[1]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

Plaintiff Ronnie Randolph, a deaf-mute prisoner in the custody of the Missouri Department of Corrections, filed this lawsuit after the Department of Corrections failed to provide him with a sign language interpreter during disciplinary proceedings. The defendants appeal under 28 U.S.C. § 1292(a) the trial court's issuance of a permanent injunction. We vacate the injunction, reverse the district court's grant of summary judgment in part, and remand.

# I

In 1983, plaintiff Ronnie Randolph was convicted of capital murder and sentenced to life in prison. Randolph was initially incarcerated at Jefferson City Correctional Center ("JCCC"). In 1989, Randolph was transferred to Potosi Correctional Center ("PCC"). In October of 1996, Randolph was transferred back to JCCC.

Randolph suffers from profound hearing loss and cannot understand most speech spoken at an average conversational level. Randolph's primary means of communication is American Sign Language. When conversing with a person who does not understand sign language, Randolph can communicate to some extent via gestures, lip reading, and speaking. The degree to which these methods work depends on the patience of the person trying to communicate with Randolph and how long they have interacted with him. When these methods are inadequate, Randolph reads and writes messages in standard English. Randolph wears hearing aids provided by the Department of Corrections, but both parties' experts agree that they are insufficient for his level of hearing loss. Even with improved hearing aids, Randolph would have difficulty understanding most speech.[2]

---

[2]Randolph's expert testified that he believed hearing aids rather than an interpreter would be preferable for Randolph because an interpreter would isolate Randolph from the prison population.

In 1989, after he was transferred to PCC, Randolph filed a grievance requesting a sign language interpreter for all stages of prison disciplinary proceedings, medical procedures, educational programs and counseling, and all programs and activities relating to prison confinement. PCC has been unable to locate their response to the grievance. The parties agree, however, that no interpreter was provided for Randolph following his 1989 request.

In 1993, Randolph received two conduct violations. After Randolph submitted written statements on his own behalf, the violations were dismissed and no discipline was imposed. Randolph did not request a sign language interpreter in either proceeding.

In 1994, Randolph received three additional conduct violations. In February, Randolph was written up for insulting behavior and disobeying an order. Randolph was found guilty of the violations in a disciplinary proceeding. Randolph did not request a sign language interpreter prior to the hearing on his conduct violations. However, on March 3, 1994, Randolph filed an informal resolution request ("IRR") asking that the violations be expunged from his records. He also requested that "effective immediately the Dept. of Corr. employ a capable staff person whom can assist me with my needs to communicate with the staff personnel." The IRR was denied. Randolph then filed a formal grievance appealing his conduct violations. In his grievance, Randolph wrote "I ask that the Potosi Corr. Center hire/employ an interppreter [sic] for persons like myself, to insure meaningful communications." The Superintendent of PCC denied Randolph's grievance and stated that his "request for an interperator [sic] is a separate subject and will not be addressed."

In early July of 1994, Randolph received a conduct violation for assault after he threw two boxes of cookies at a food service worker. At the disciplinary hearing on July 6, Randolph submitted a written statement in his defense and did not request a sign language interpreter. Because of the seriousness of the assault violation, a

classification hearing was held on July 7. As a result of the classification hearing, Randolph was placed in administrative segregation.

On September 2, Randolph submitted a grievance complaining that he had been denied due process during the assault disciplinary hearing because he was not provided with a qualified interpreter as required by Missouri state law. On October 5, 1994, Randolph's grievance was denied with the comment that Randolph had not asked for an interpreter at the time of the hearing and that he had fully understood the proceedings, as evidenced by the statement he submitted on his own behalf. Randolph then filed a first and second grievance appeal. Both appeals were denied by the Department of Corrections.[3]

## II

On May 18, 1994, Randolph filed a motion to proceed *in forma pauperis* with the United States District Court for the Eastern District of Missouri. Randolph's motion was forwarded to the Court's *pro se* unit. On August 25, 1994, the Court granted Randolph's motion to proceed *in forma pauperis*. On the same day, Randolph's original complaint was filed. Randolph eventually filed a first and second amended complaint. The second amended complaint named the Missouri Department of Corrections, Bill Rodgers, Don Roper, Paul Delo, Michael Bowersox, and Dora Schriro as defendants. Rodgers was Randolph's Correctional Classification Assistant at PCC and served as a hearing officer during one of Randolph's disciplinary proceedings. Roper was the Associate Superintendent at PCC from 1989 to 1995 and reviewed Randolph's requests for a sign language interpreter. Delo was PCC's Superintendent from 1989 to 1995 and reviewed and denied Randolph's

---

[3]Randolph also wrote letters to prison officials outside the grievance process complaining that his due process rights had been violated due to PCC's failure to provide a sign language interpreter.

-4-

grievances requesting an interpreter. Bowersox replaced Delo as PCC's superintendent in August of 1995. Schriro is director of the Missouri Department of Corrections and reviewed and denied a request for an interpreter. Randolph's second amended complaint asserts five claims -- due process and equal protection violations under 42 U.S.C. § 1983 (Counts I and II), violations of the Americans with Disabilities Act ("ADA") (Count III), violations of § 504 of the Rehabilitation Act ("RA") (Count IV), and violations of Missouri Statute § 476.750 (Count V).

The parties filed cross-motions for summary judgment. On October 10, 1997, the district court granted the defendants' motion for summary judgment on the due process and equal protection claims. The district court also granted the individual defendants' motion for summary judgment on the ADA and RA claims, finding the individuals were not "employers" subject to suit under the ADA or the RA.[4] The court granted Randolph's motion for summary judgment as to liability on the ADA, RA, and Missouri Statute § 476.750 claims against the Department of Corrections, and reserved for trial the issue of damages against the Department of Corrections. Finally, the trial court reserved for trial the issue of money damages on the state law claim against the individual defendants.[5]

---

[4]In addition, the district court dismissed Bowersox as an individual defendant because he was not involved in the acts alleged in the complaint. The portions of the district court's order granting the defendants' motion for summary judgment on the due process and equal protection claims, granting the individual defendants' motion for summary judgment on the ADA and RA claims, and dismissing Bowersox as a defendant are not before us at this time.

[5]Although we need not address the issue on this appeal from an injunction, *see discussion infra*, we note that it is unclear from the district court's opinion whether the court granted Randolph's motion for summary judgment as to liability on the state law claim against the individual defendants or reserved that issue for trial. On remand, the district court may clarify whether trial on both liability and damages, or on damages only, is required as to the individual defendants on Count V.

After finding in favor of Randolph on his ADA, RA, and Missouri state law claim against the Department of Corrections, the District court issued a permanent injunction, based on its summary judgment rulings, which ordered:

> that the Missouri Department of Corrections, and its agents, including any prison facility within which plaintiff is now or hereafter shall be confined, and all officers or persons having control of such prison facilities and its programs, shall hereafter provide plaintiff with sign language interpreter services whenever he is the subject of a non-emergency disciplinary or classification hearing, during all non-emergency medical care, and during any educational programs in which plaintiff participates.

Finally, the district court certified the summary judgment order, including the injunction, for immediate appeal as involving a "controlling question of law as to which there is substantial ground for difference of opinion" under 28 U.S.C. § 1292(b).

On November 19, 1997, the defendants filed a petition with this Court for permission to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court denied the defendants' petition. The defendants then filed a timely notice of appeal pursuant to 28 U.S.C. § 1292(a), which provides that the courts of appeals have jurisdiction of appeals from interlocutory orders of the district courts granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.

On appeal, the defendants raise six primary issues:

> 1.  Whether the district court lacked subject matter jurisdiction to issue declaratory and injunctive relief

because plaintiff's claims were moot due to plaintiff's transfer to another prison.

2. Whether the district court erred in granting summary judgment because there was no showing of discrimination based on plaintiff's disability.

3. Whether the district court erred in granting summary judgment because there are genuine issues of material fact as to whether a sign language interpreter is a reasonable accommodation and whether this accommodation imposes an undue burden due to the safety and security concerns and financial burden.

4. Whether the district court erred in finding that plaintiff is entitled to trial on damages under the ADA, RA and state law claims when plaintiff has not shown intentional discrimination.

5. Whether the district court abused its discretion in issuing broadly worded injunctive relief ordering a sign language interpreter at any prison where plaintiff is incarcerated for all remaining years of plaintiff's life sentence.

6. Whether the district court erred in taking jurisdiction of the pendent state law claim when the relief sought directly impacts the State and is barred by the Eleventh Amendment.

On an appeal from an injunction, however, the issues the Court may review are limited. In *Fogie v. THORN Americas, Inc.*, 95 F.3d 645 (8th Cir. 1996), *cert. denied*, 117 S.Ct. 1427 (1997), this Court explained the parameters of its jurisdiction to review interlocutory appeals of injunctive relief under 28 U.S.C. § 1292(a):

> We have jurisdiction to review the district court's issuance
> of the injunction under 28 U.S.C. § 1292(a)(1) which
> provides for appeal of interlocutory orders granting or
> refusing to grant injunctions. Our jurisdiction under
> section 1292(a)(1) also extends to the remainder of the
> appealed order to the extent the injunction is
> interdependent with the remainder of the appealed order.
> Under this standard, we have jurisdiction to review all
> portions of the order that are dependent on the resolution
> of the issues necessarily resolved in reviewing the
> injunction order. In other words, in addition to the
> injunction order, we may review other issues only if they
> are inextricably bound up with the injunction. We need not
> undertake a review of issues whose resolution is not
> necessary to effectively review the injunction.

*Id.* at 648 (citations omitted). Our review of the district court's summary judgment order is therefore limited by the extent to which it is "inextricably bound up with the injunctive relief granted in this case." *Id.* at 649. Applying this standard, we decline to review issues regarding monetary damages or issues relating to the individual defendants' liability.[6] Yet we must review the order to the extent it grants summary judgment to Randolph on his ADA, RA, and Missouri state law claim against the Department of Corrections, because the validity of the injunction is dependent upon the rulings on the summary judgment motions.

We review the district court's issuance of a permanent injunction for abuse of discretion. *See, e.g., F.D.I.C. v. Bell*, 106 F.3d 258, 262-63 (8th Cir. 1997); *Baker Elec. Coop., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994); *ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994), *cert. denied*, 513 U.S. 1017 (1994). "Abuse of discretion occurs if the district court reaches its conclusion by

---

[6]The injunction was entered against the Department of Corrections only, not the individual defendants.

applying erroneous legal principles or relying on clearly erroneous factual findings." *See, e.g.*, *Fogle*, 95 F.3d at 649. To the extent we examine the district court's summary judgment decision, the standard of review is *de novo.* Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1280 (8th Cir. 1996).

## III

### A.    Mootness

The Department of Corrections argues the district court lacked subject matter jurisdiction to issue injunctive relief because Randolph's claims were mooted by his transfer from JCCC to PCC in 1996. The district court apparently assumed for the sake of argument that Randolph's equitable claims were mooted by the transfer, but held they fell within the exception for claims capable of repetition yet evading review. The district court found:

> [neither] plaintiff's deafness nor his life sentence within the Missouri Department of Corrections is at all likely to change. If relief were denied as moot, defendants could simply transfer plaintiff back and forth between PCC and JCCC (or other facilities) to evade review of these issues by any Court.

However, the district court's analysis went too far by applying the capable of repetition yet evading review exception, as Randolph's claims for injunctive relief were not moot.[7]

---

[7]The capable of repetition yet evading review rule is an extraordinary and narrow exception to the mootness doctrine. It applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation the complaining party will be subject to the same

A claim for equitable relief is moot "absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The defendants rely on *Martin v. Sargent*, 780 F.2d 1334 (8th Cir. 1985), to support their mootness argument. In *Martin*, this Court held that once an inmate is transferred to another institution, his claim for injunctive relief against the warden of the first prison to improve the former prison's conditions is moot. *Id.* at 1337. *Martin* is readily distinguished from this case and does not control. In *Martin*, the injunction sought could not address future wrongs the plaintiff was likely to suffer because the first warden had no control over the second prison. The same cannot be said in Randolph's action. Randolph asserts claims directly against the Missouri Department of Corrections, and alleges the Department of Corrections violated his rights under the ADA, the RA and under Missouri state law by failing to provide him with a sign language interpreter. Thus, unlike the plaintiff in *Martin,* Randolph has claimed he is exposed to an actual future threat under the control of the Department of Corrections -- that he will not be provided an interpreter. Moreover, the injunction was issued against Missouri's Department of Corrections, which controls both prisons and the funding necessary to provide the sign language interpreter requested by Randolph. Accordingly, Randolph's claims for injunctive relief are not moot.

**B.     The ADA and RA Claims**

_____

action again. *See, e.g.*, *Hickman v. Missouri*, 144 F.3d 1141, 1143 (8th Cir. 1998) (quoting *Spencer v. Kemna*, 523 U.S. 1, 118 S. Ct. 978, 988 (1998)). Randolph was transferred once prior to his litigation and once after commencing his litigation. Nothing in this case suggests that the Department of Corrections has transferred or will transfer Randolph in an attempt to moot his claim. Had Randolph's claims been moot, we doubt the mere possibility of a transfer would have been sufficient to support application of this exception.

The Department of Corrections next argues that the district court abused its discretion by issuing an injunction to enforce Randolph's ADA and RA claims. The standard for determining whether a permanent injunction should issue is essentially the same as the familiar standard for a preliminary injunction. *See Amoco Prods. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). In a preliminary injunction, a district court must balance four factors to determine whether injunctive relief is merited: 1) the threat of irreparable harm to the movant; 2) the balance between this harm and the harm to the nonmoving party should the injunction issue; 3) the likelihood of success on the merits; and 4) the public interest. *See Fogie v. THORN Ams., Inc.*, 95 F.3d 645, 654 (8th Cir. 1996) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "The standard is the same for a permanent injunction except that the movant must show actual success on the merits." *Amoco Prods. Co.*, 480 U.S. at 546 n.12.

The district court did not make express findings regarding the four injunction factors in its order. Although express findings may have clarified the district court's reasoning, they are of little import on appeal as the defendants challenge only the district court's conclusion that Randolph succeeded on the merits of his ADA and RA claim.[8] Therefore, we must review the district court conclusions that support the injunction -- the grant of summary judgment to Randolph on his ADA and RA claims against the Department of Corrections.

Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity. A qualified individual with a

---

[8]The defendants also argue that the district court abused its discretion by issuing a permanent injunction without considering the Prison Litigation Reform Act, codified at 18 U.S.C. § 3626. Defendants failed to raise this issue below, and have thus waived the argument on appeal. *See, e.g., Maypenny v. U.S.*, 948 F.2d 1057, 1062 (8th Cir. 1991) ("we do not consider issues not passed on by the lower court").

disability is defined as any person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The term "public entity" is defined as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). The Supreme Court recently held that Title II of the ADA applies to state prisons. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998).

The RA provides that no otherwise qualified individual with a disability shall be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The RA defines "program or activity" to include "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b). The ADA and the RA are "similar in substance" and, with the exception of the RA's federal funding requirement, "cases interpreting either are applicable and interchangeable." *See Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (citing *Allison v. Department of Corrections*, 94 F.3d 494, 497 (8th Cir. 1996)); *see also Wooten v. Farmland Foods,* 58 F.3d 382, 385 n.2 (8th Cir. 1995).

The Department of Corrections first argues that Randolph failed to state a *prima facie* case under either the ADA or the RA. To state a prima facie claim under the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability. *See* 42 U.S.C. § 12131 *et seq.*; *see also Gorman*, 152 F.3d at 911-12; *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). The RA contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance. *See Gorman*, 152 F.3d at 911; *Thomlison v. City of Omaha*, 63 F.3d 786, 788 (8th Cir. 1995). As an affirmative defense, a defendant

may demonstrate that the requested accommodation would constitute an undue burden. *See Gorman*, 152 F.3d at 911.

Here, the district court held:

> [t]he undisputed evidence shows that plaintiff is a disabled person within the meaning of the statutes and that he is otherwise qualified for the benefits in question, that is, the provision of medical care, educational training, and participation in disciplinary and classification proceedings. The undisputed evidence also shows that although he has been provided some form of those benefits, he has not received the full benefits solely because of his disability.

We agree with the district court's analysis. The Department of Corrections argues strenuously that Randolph was not excluded from prison services, programs, and activities. It is true that Randolph could physically attend activities. However, the ADA and RA require that otherwise qualified individuals receive "meaningful access" to programs and activities. *See Bonner v. Lewis*, 857 F.2d 559, 561 (9th Cir. 1988) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). The record does not contain credible evidence to support a finding that Randolph enjoyed meaningful access to the prison's internal disciplinary process, even if he was capable of limited participation.

The Department of Corrections also claims that Randolph failed to make a timely request for a sign language interpreter and it cannot be found liable for failing to provide unsolicited accommodations. *See Lue v. Moore*, 43 F.3d 1203, 1206 (8th Cir. 1994); *Wynne v. Tufts Univ. School of Med.*, 976 F.2d 791, 795 (1st Cir. 1992), *cert. denied*, 113 S.Ct. 1845 (1993). The Department of Corrections alleges that Randolph originally made a request for an interpreter in 1989, and then failed to repeat that request until after he was found guilty in the disciplinary proceedings. While it is true Randolph did not request an interpreter for the February 1994

disciplinary proceedings until after he was found guilty, Randolph did ask for an interpreter in his March 14, 1994 IRR and appeal. When Randolph received his July 1994 conduct violations, the Department of Corrections was on notice that Randolph claimed he could not fully participate in disciplinary proceedings without an interpreter. This is particularly true given the Department of Corrections' response to Randolph's March requests for an interpreter. The Department of Corrections told Randolph that his "[r]equest for an interperator is a separate subject and will not be discussed." After receiving this response, it is not surprising that Randolph did not ask for an interpreter at the July disciplinary proceeding. While it is true that public entities are not required to guess at what accommodations they should provide, the requirement does not narrow the ADA or RA so much that the Department of Corrections may claim Randolph failed to request an accommodation when it declined to discuss the issue with him.

The Department of Corrections' final argument has more merit. The Department of Corrections claims summary judgment on Randolph's ADA and RA claims was inappropriate because there are genuine issues of material fact regarding whether a sign language interpreter is a reasonable accommodation or imposes an undue burden on the defendants -- particularly considering the heightened security concerns of a prison. The district court recognized that "normally whether a requested accommodation is unduly burdensome might be a question for the fact-finder." The district court rejected the Department of Corrections' claim of undue burden, however, because it found that Missouri Statute § 476.750 requires the prison to provide an interpreter. Thus, the Court held that Missouri's legislature had determined, as a matter of law, that such an accommodation is not unduly burdensome.

We disagree with the district court's conclusion that Missouri Statute § 476.750 alone establishes the Department of Corrections' liability under the ADA and RA. The Missouri statute creates rights and duties under Missouri state law, but

cannot be used to definitively establish rights and duties under federal law. The defendants presented substantial evidence that Randolph's request for an interpreter created safety and security issues, as well as placed a financial burden on the prison. The Department of Corrections is entitled to have its evidence considered by the fact-finder in this case. *See, e.g., Duffy v. Riveland*, 98 F.3d 447, 456 (9th Cir. 1996) (whether deaf plaintiff required registered sign language interpreter was fact question).

Thus, the district court erred in granting Randolph's motion for summary judgment against the Department of Corrections on the ADA and RA claims, and we will reverse and remand the district court's order as to these issues. Moreover, without a finding of success on the merits of the ADA and RA claims, we must conclude the district court abused its discretion by issuing the injunction to remedy Randolph's ADA and RA claims.

## C.    Missouri State Law Claim

The injunction issued against the Department of Corrections was also based in part on the district court's conclusion that the Department of Corrections violated Missouri Statute § 476.750 *et seq*. The Missouri statute requires that "a designated responsible authority shall provide" a qualified sign language interpreter at:

> any proceeding concerning the well-being or rehabilitation of a deaf person within a state prison, including, but not limited to, any disciplinary hearing, parole hearing, psychological evaluation/hearing, administrative hearing, sexual assault prevention program, counseling, medical care, any on-the-job or vocational training or any educational program.

Mo. Stat. § 476.753, subd. 1(4). The Department of Corrections raises a number of arguments addressing the merits of Randolph's state law claim. We need not address

these arguments, however, because an injunction may not be issued against the Missouri Department of Corrections to enforce a Missouri statute.

The Eleventh Amendment precludes a federal court from ordering a state, including its agencies or officials, to conform their conduct to state law. *See Pennhurst State. Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Treleven v. University of Minn.*, 73 F.3d 816, 819 n.4 (8ᵗʰ Cir. 1996). A state may, of course, waive its *Pennhurst* immunity. However, waiver will be found only based upon "the most express language" or other "overwhelming implications from the text as will leave no room for any other reasonable construction." *See Welch v. Texas Dep't of Hwys. & Public Transp.*, 483 U.S. 468, 472 (1987), cited in *Barnes v. Missouri*, 960 F.2d 63, 64-65 (8ᵗʰ Cir. 1992). Randolph does not argue, nor does the record reflect, that Missouri has waived its Eleventh Amendment immunity to claims under Mo. Stat. § 476.753. Thus, we must reverse the district court's order granting Randolph's motion for summary judgment against the Department of Corrections on his claim under Mo. Stat. § 476.750, and vacate the injunction.

## IV

We VACATE the district court's issuance of a permanent injunction because Randolph has failed to show success on the merits of his claims based on the present record. We REVERSE the district court's order granting Randolph's motion for summary judgment against the Department of Corrections on the ADA and RA claims, and REMAND for further proceedings consistent with this opinion. We REVERSE the district court's order granting Randolph's motion for summary judgment against the Department of Corrections on Randolph's claim under Mo. Stat. § 476.750, and ORDER the district court to dismiss the state law claim against the Department of Corrections.

A true copy.

-16-

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT