[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14032
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00117-WS-CAS


EPHRIM MCMULLEN,

                                                                Plaintiff - Appellant,

versus

WAKULLA COUNTY BOARD OF COUNTY COMMISSIONERS,

                                                                Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 25, 2016)

Before WILLIAM PRYOR, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Ephrim McMullen ("Plaintiff") sued Defendant Wakulla County Board of Commissioners ("Defendant") for disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 794.  The district court granted summary judgment to Defendant after finding that the Rehabilitation Act did not apply.  We affirm.

## I.    Background

Plaintiff became a volunteer firefighter in Wakulla County in 2004.  In August 2013, the County's fire chief and public safety director did not approve Plaintiff's nomination for battalion chief of the Apalachee Bay Volunteer Fire Department (a paid position), because Plaintiff suffered from an unrepaired hernia.  According to Defendant, this medical condition disqualified Plaintiff from being a firefighter.

Plaintiff alleged one count of disability discrimination under the Rehabilitation Act in his Second Amended Complaint.  The Rehabilitation Act makes it unlawful for any "program or activity" receiving federal financial assistance to discriminate on the basis of disability.  29 U.S.C. § 794.  Defendant moved for summary judgment on the sole ground that the County did not receive any federal assistance for its Fire Rescue Department or for the provision of fire services, and thus the Rehabilitation Act did not apply.  Defendant cited *Doyle v. Univ. of Ala. in Birmingham*, 680 F.2d 1323, 1326–27 (11th Cir. 1982), which

narrowly interpreted "program or activity" to mean only the specific parts of a governmental unit that directly receive federal financial assistance. But in the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 (1988), Congress amended the definition of "program or activity" to include "*all of the operations* of . . . a department, agency, special purpose district or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A) (emphasis added). Plaintiff thus argued that the relevant entity to consider was the County as a whole, such that if any part of the County received federal funds, the Rehabilitation Act applied.

The district court recognized that Congress had broadened the definition of "program or activity," and instead of citing *Doyle*, the court cited cases from other Circuits interpreting the amended definition. Still, the court agreed with Defendant that the relevant entity to consider was the County's Fire Rescue Department, not the entire County. The Fire Rescue Department comprises three divisions: fire services, emergency medical services ("EMS"), and animal control. Under the expanded definition, the court reasoned, the Department was covered by the Rehabilitation Act if any of its divisions received federal funds. The court went on to hold that no division received such funds and granted summary judgment to Defendant.

3

## II.    Analysis

We review a district court's grant of summary judgment *de novo*. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836–37 (11th Cir. 2006). Summary judgment is appropriate where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). Plaintiff raises two arguments on appeal: (1) the district court erred by applying *Doyle*'s narrow interpretation of the Rehabilitation Act, and (2) there was conflicting evidence about whether the Fire Rescue Department received federal funds, but the district court resolved factual disputes when it sided with Defendant.

### A.    Scope of "Program or Activity"

This Court has not directly addressed whether *Doyle* remains good law in light of the Restoration Act's amendment to the Rehabilitation Act. In *Doyle*, we held that it was not sufficient "simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc." 680 F.2d at 1326 (quoting *Brown v. Sibley*, 650 F.2d 760, 769 (5th Cir. Unit A July 1981)). Instead, "[a] private plaintiff in a [Rehabilitation Act] case must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance." *Id.* at 1326–27 (quoting *Brown*, 650 F.2d at 769). The Supreme Court adopted the same narrow interpretation of "program or activity" for Title IX and Rehabilitation Act cases in *Grove City College v. Bell*,

4

465 U.S. 555 (1984), and *Consolidated Rail Corporation v. Darrone*, 465 U.S. 624 (1984), respectively.

Congress then passed the Restoration Act "to restore the prior consistent and long-standing executive branch interpretation and broad, institution-wide application of" civil rights legislation, including the Rehabilitation Act.  Pub. L. No. 100-259, § 2(2).  The Senate Report even declared that the purpose of the legislation was "to overturn the Supreme Court's 1984 decision in *Grove City College v. Bell*" and, by extension, *Consolidated Rail Corporation*.  S. Rep. No. 100-64, at 2 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3, 3–4.  To that end, Congress amended the definition of "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government."  29 U.S.C. § 794(b)(1)(A).  The definition also covered, in the case of federal assistance to a State or local government, the State or local government that distributes the assistance and each department or agency that receives it.  § 794(b)(1)(B).

Plaintiff contends that the expanded definition means that he need only show that the County as a whole received federal funds, not the Fire Rescue Department or, as our precedent in *Doyle* would require, the fire services division directly.  We are generally bound by a prior panel decision until that decision is overruled by the Supreme Court or this Court sitting en banc, *United States v. Steele*, 147 F.3d

5

1316, 1318 (11th Cir. 1998) (en banc), but "where our authority derives from Congress, . . . a clear change in the law by Congress could . . . justify a panel of this court in not following an earlier panel's decision, where the prior panel's decision was based on legislation that had been changed or repealed." *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 840 (11th Cir. 2003) (quoting *United States v. Woodard*, 938 F.2d 1255, 1258 n.4 (11th Cir. 1991)). Because Congress amended the definition of "program or activity" for the purpose of overturning *Grove City College* and *Consolidated Rail Corporation*, our identical interpretation in *Doyle* is no longer good law. *See Lussier v. Dugger*, 904 F.2d 661, 664–65 (11th Cir. 1990) (noting that "the continued vitality of *Grove City* was effectively eliminated by . . . the passage of the Civil Rights Restoration Act"). We have not, however, construed the new definition of "program or activity" in light of the Restoration Act.

"The starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999). We read a statute's words "as they are commonly and ordinarily understood, and we read the statute to give full effect to each of its provisions." *Id.* We therefore find that "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government," 29 U.S.C. § 794(b)(1)(A), sweeps broader than our previous interpretation under *Doyle*. But

the ordinary meaning of these terms cannot be construed to mean the County as a whole, as Plaintiff suggests. The relevant unit is "a department, agency, special purpose district or other instrumentality" of the County, such as the Fire Rescue Department. So, if any operation of that Department—including fire services, EMS, or animal control—receives federal funds, the whole Department is covered by the Rehabilitation Act. On the other hand, Plaintiff cannot rely on funds received by other County departments unconnected to his claim to show that the Rehabilitation Act applies.

Our reasoning is consistent with other Circuits that have considered the Rehabilitation Act's amended language. In *Schroeder v. City of Chicago*, 927 F.2d 957 (7th Cir. 1991), the Seventh Circuit explained that the Restoration Act was intended to overrule *Grove City College* and held that "'program or activity' was expanded from a specific program or specific activity to 'all the operations' of the university or hospital or other institution that conducted the program or activity . . . But the amendment was not . . . intended to sweep in the whole state or local government, so that if two little crannies (the personnel and medical departments) of one city agency (the fire department) discriminate, the entire city government is in jeopardy of losing its federal financial assistance." *Id.* at 962.

The Eighth Circuit similarly held that the City of Omaha's Public Safety Department was the defining unit in a Rehabilitation Act suit, not the Fire Division

7

within that department. *Thomlison v. City of Omaha*, 63 F.3d 786, 789 (8th Cir. 1995). So, while "the Fire Division did not receive any federal assistance directly, other Public Safety Department divisions, including the Police Division, received federal funds." *Id.* As a result, the entire Public Safety Department was subject to the Rehabilitation Act. *Id.* In reaching this conclusion, the court did not suggest that federal funds received by other departments would trigger coverage under the Rehabilitation Act.

Moreover, the Third Circuit rejected the argument that an entire state is liable simply because one of its departments or agencies receives or distributes federal funds. *See Koslow v. Pennsylvania*, 302 F.3d 161, 171 (3d Cir. 2002). Importantly, the Third Circuit observed that "if the entire state government were subject to [the Rehabilitation Act] whenever one of its components received federal funds, subsection (b)(1)(B)[, which provides that both the government entity that distributes federal funds and the entity that receives them are covered by the Rehabilitation Act,] would be redundant." *Id.*; *accord Arbogast v. Kan., Dep't of Labor*, 789 F.3d 1174, 1184 (10th Cir. 2015) ("Generally, courts considering the scope of a state entity's waiver under the Rehabilitation Act acknowledge that the definition of 'program or activity' was not intended to sweep in the whole state or local government whenever one subdivision discriminates. Rather, courts interpret the phrase 'program or activity' to only cover all the activities of the department or

8

the agency receiving federal funds." (internal quotation marks, brackets, and citations omitted)).

In sum, *Doyle*'s narrow interpretation of "program or activity" is no longer good law. The district court correctly found that the relevant unit to consider was the Fire Rescue Department and all of its operations, not the fire services division alone or the County as a whole.

B.    There Is No Evidence that the Fire Rescue Department Received Federal Funds

Having concluded that the Fire Rescue Department is the relevant entity to examine, we turn to whether there was evidence that any of the Department's operations received federal financial assistance. Plaintiff first asserts that Defendant received annual "payments in lieu of taxes" from the federal government, which payments benefitted the Fire Rescue Department. These payments help offset lost property taxes from tax-immune federal land such as wilderness areas and national parks located in the County. *See* 31 U.S.C. § 6902(a)(1) (providing that "the Secretary of the Interior shall make a payment for each fiscal year to each unit of general local government in which entitlement land is located"). Plaintiff notes that the payments are then deposited into the County's general revenue fund and are used to support EMS and animal control—units of the Fire Rescue Department.

9

The Rehabilitation Act does not define federal financial assistance, but we have held that it means "the federal government's provision of a subsidy to an entity," as opposed to providing compensation. *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005). The relevant inquiry in determining whether certain federal funds constitute financial assistance turns on whether Congress intended to compensate or provide a subsidy. *Id.* at 1336. The Supreme Court has observed that Congress passed the Payment in Lieu of Taxes Act, 31 U.S.C. § 6901 *et seq.*, to "*compensate*[] local governments for the loss of tax revenues resulting from the tax-immune status of federal lands . . . located in their jurisdictions, and for the cost of providing services related to these lands." *Lawrence Cty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 258 (1985) (emphasis added). We therefore conclude that these payments are compensation and do not amount to financial assistance within the meaning of the Rehabilitation Act.

Plaintiff also argues that it was disputed whether the Fire Rescue Department bought equipment like breathing apparatuses using federal funds. Plaintiff relies on deposition testimony of the County Administrator, who testified that the County received payments in lieu of taxes and grants for the Sheriff's Department. When asked whether the County received federal money for firefighting, the County Administrator responded, "Other than through grants for

buying some equipment or something like that, that would be about it." Plaintiff argues that this testimony "shows that [the Administrator was] aware that the Fire Rescue Department did, in fact, receive federal funds for 'buying some equipment.'" As Defendant argues, however, the Administrator later said that he did not actually know of any federal grants to that Department. The Administrator was asked if the Department had purchased a fire truck with federal assistance, but he said the Department had made no such purchase during his tenure. When asked what else the Department had purchased with federal money, he responded, "I am not sure. It would have been small apparatuses through small funds like, you know, $2,000 here or $6,000 there for breathing apparatuses, et cetera. Nothing big." And then the Administrator said that the County had methods of tracking grant money, and the best person to answer questions about those funds was the County's Finance Director, who in turn stated that he had thoroughly reviewed Wakulla County's recent budgets and confirmed that the County had not received or spent any federal financial assistance in connection with the Fire Rescue Department.

Considered in context, the County Administrator's testimony showed he was unsure if the Fire Rescue Department had received any federal grants. His reference to breathing apparatuses was only speculation of what the grants "would have been." Plaintiff contends that when construing the facts in his favor, we must

11

assume the Administrator meant that the Fire Rescue Department had received federal funds, thus creating a genuine factual dispute. But an issue of fact is not genuine unless a reasonable jury could return a verdict in favor of the nonmoving party. *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013). And here the record does not support the inference that the Administrator knew the Fire Rescue Department received federal funds and was simply unable to remember the specific grants, as Plaintiff insists. *See id.* (court should not adopt plaintiff's version of facts when that version "is blatantly contradicted by the record" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))). Instead, the Administrator deferred to the County's Finance Director, who stated that the Department did not receive any federal funds. There is thus no genuine dispute that the Department did not receive federal financial assistance.[1] Consequently, the Rehabilitation Act does not apply, and the district court correctly granted summary judgment to Defendant.

## III.   Conclusion

For the reasons discussed above, we affirm the order of the district court granting summary judgment to Defendant.

**AFFIRMED.**

---

[1] Plaintiff mentions several other sources of federal assistance, none of which aided the Fire Rescue Department. And while Plaintiff argues that the Department received certain FEMA funds, he fails to cite to any such evidence in the record. In fact, the County Administrator said that FEMA assistance went into a separate fund, and the Public Safety Director said that the Fire Department did not receive any FEMA aid.

12